The First National Bank of Metropolis

*v.*

James Herbert Leech *et al.*

*Opinion filed February 17, 1904.*

1. Guardian and Ward—*trust arises where the guardian buys land
with ward's money.*  A trust, by implication, in favor of the ward
arises where the guardian invests the ward's money in land and
takes title in himself, and the ward may hold the land as trust es-
tate regardless of the motives of the guardian in taking title.

2. Same—*purchaser from guardian, with notice of trust, becomes trus-
tee for ward.*  A bank which accepts an assignment of a certificate
of purchase from a guardian as security for the latter's individual
account, and subsequently acquires a deed to the land, holds title
as trustee for the ward, where it had notice that the certificate
was acquired by the guardian with his ward's money.

3. Judgments and Decrees—*it is sufficient if enough allegations are
proved to sustain the decree.*  If sufficient of the charges alleged in the
bill are proved to sustain the decree it is not ground for reversal
that other allegations are not proved.

4. Same—*extent to which decree approving report of sale is res judicata.*
An order confirming the master's sale of property to a guardian
and the issue of a certificate of sale in his name is an adjudication
that the guardian holds the legal title, but is not an adjudication
as to whether he holds it for himself or in trust.

Appeal from the Circuit Court of Massac county; the
Hon. O. H. Harker, Judge, presiding.

Appellees, on June 12, 1902, filed their bill of complaint in the circuit court of Massac county against appellant. The bill alleges that on January 10, 1896, one Frank Adams was appointed guardian of complainants, who were then minors, and as such guardian received from his predecessor $7037.12; that on January 20, 1896, Adams purchased a note for $4000, secured by a mortgage upon certain real estate, paying for the same out of said wards' funds, and that the note and mortgage were duly assigned to him as guardian of complainants; that this mortgage was afterwards foreclosed, and on March 19, 1898, the master offered for sale the real estate therein described, under the decree of foreclosure; that the same was sold to complainant in the foreclosure suit, Adams, as their guardian, bidding the sum of $4969.79, being the amount of the debt, interest and costs; that at the time of bidding Adams was personally insolvent; that he owed the First National Bank of Metropolis over $1000, evidenced by over-due promissory notes, and owed other creditors in the aggregate $1000, a large portion of which was held by said bank for collection; that the bank and its officers knew of the insolvent condition of Adams; that the master refused to issue a certificate of sale to Adams, as guardian, until the costs of the proceedings, amounting to $162.50, were paid; that Adams did not have the money to pay these costs and applied to said bank for a loan of that amount, offering to deposit with the bank, as collateral security for this loan, the certificate of sale when issued; that the bank refused to loan the money in this way, but offered, if Adams, as such guardian, would receipt the master for the full amount due under the decree, and would have the master issue to him, individually, the certificate of sale, and would execute to the bank a new note for $2254, and assign to the bank, as security for such new note, the certificate of sale, the bank would pay said costs, would surrender all evidences of private indebtedness due it from Adams

and would let him have sufficient money to pay his other
creditors; that Adams accepted this offer, receipted the
master, as guardian, without receiving any money from
said master, received a certificate of sale to himself,
individually, executed the note for $2254 to said bank
and assigned and turned over to the bank the certificate
of sale; that the bank surrendered the private notes to
Adams and placed to his credit in the bank almost $1000
in addition, which was soon checked out and paid by
the bank to other creditors of said Adams; that on No-
vember 9, 1900, the time for redemption having expired,
the master executed a deed to the bank, as assignee of
Adams; that Adams obtained possession of the property,
but on May 20, 1902, surrendered possession to the bank,
recognized it as a landlord and agreed to thenceforth pay
rent to it.    The bill further charges that the bank had
full knowledge when said note and mortgage were pur-
chased by Adams that they were purchased with money
held by him as guardian; that it had full knowledge when
he bid in the property at the sale that he bid as guardian
and that he was personally insolvent; that it knew he
received no money from the master, and knew that the
master had received no money from him except $162.50,
which had been furnished by the bank to pay the costs;
that it knew when it took the new note and the certifi-
cate that Adams was insolvent and that the note repre-
sented his private indebtedness, and that the certificate
was held by him in the capacity of trustee or guardian
of complainants, and that the assignment of the certifi-
cate by Adams to the bank was therefore fraudulent and
void; that the bank took the title burdened with a re-
sulting trust in favor of complainants; that at the time
of the above transactions complainants were minors and
knew nothing of what had been done; that Frank Adams
has recently filed his report as guardian, and that there-
in the complainants are charged with said premises at
the valuation of $4000; alleges willingness to accept the

property at that valuation, but states that appellant now claims the absolute title to said premises. The prayer is that the assignment be declared fraudulent and void as against complainants; that the bank be decreed to hold the premises in trust for complainants and be ordered to convey the legal title to them; that an accounting for the rents and profits be had, and for general relief. The appellant and Frank Adams are made parties defendant.

A default was taken against Adams, but the bank answered, admitting the purchase of the note and mortgage by Adams and the foreclosure proceedings, but denying that Adams purchased the property as guardian, and specifically denying all other material allegations in the bill. The complainants filed a replication to this answer.

The cause was heard without other pleading. The evidence was taken in open court, and a decree rendered finding the allegations of the bill to be true, finding the equities to be with the complainants and awarding the relief sought by the bill. The bank appeals.

COURTNEY & HELM, for appellant.

C. L. V. MULKEY, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The principal insistence of appellant is that the decree is not sustained by the evidence, and that the case made by the evidence, if any, does not conform to the allegations of the bill. The finding of the decree is that the allegations of the bill are true as therein stated. The bill alleges that Adams acquired the certificate of purchase with funds belonging to his wards, the appellees, and alleges that the bank took the assignment of the certificate with knowledge of that fact. No question is made as to the first of these charges, but it is insisted

that the bank did not have notice. We have carefully examined the evidence contained in the record. It is somewhat conflicting. A discussion thereof would be profitless here, however, as we are satisfied that the judge of the circuit court, who saw and heard the witnesses testify, reached a correct conclusion on this question of fact.

The appellant sought to show, and did show, that before taking the assignment it sought the advice of counsel for the complainant in the foreclosure suit, and was by him assured, in substance, that the bank could lawfully take and hold the certificate as security for the money it was about to loan to Adams. This is not enough. The fact that Adams purchased this certificate with funds that he held as guardian, and that the bank accepted the certificate with knowledge of that fact, makes the bank a trustee for appellees, no matter what an attorney advised it and no matter what the bank officers believed about the question of their liability. It is the existence of these facts that makes the bank liable—not the views of its officers or attorney in regard to whether it is liable.

Where a guardian invests the money of his ward in the purchase of land, taking the title to himself, a trust arises, by implication, in favor of the beneficiary, who may follow the money into the land and hold the land as trust estate; and the motives by which the guardian was animated in taking the title to himself are wholly immaterial. *Rice* v. *Rice,* 108 Ill. 199; *Cookson* v. *Richardson,* 69 id. 137; *Reese* v. *Wallace,* 113 id. 589; 2 Pomeroy's Eq. Jur. sec. 1049.

And further: "The doctrine is, that a purchaser with notice of a trust, either express or implied, becomes himself a trustee for the beneficiary with respect of the property, and is bound in the same manner as the original trustee from whom he purchased,—and this even though he is a purchaser for a valuable consideration.—

2 Pomeroy's Eq. Jur. sec. 688; 27 Am. & Eng. Ency. of Law, pp. 251, 265; *School Trustees* v. *Kirwin,* 25 Ill. 73; *Fast* v. *McPherson,* 98 id. 496; *Cushman* v. *Bonfield,* 139 id. 219; *Union Mutual Life Ins. Co.* v. *Slee,* 123 id. 57; *Phillips* v. *South Park Comrs.* 119 id. 626." *Indiana, Illinois and Iowa Railroad Co.* v. *Swannell,* 157 Ill. 616.

The bill contains certain charges of actual fraud or fraud in fact, as distinguished from constructive fraud or fraud in law, and certain charges of conspiracy on the part of the bank and others to wrong these wards, which we do not think are sustained by the evidence; but material averments of the bill, which we have above held to have been established by the evidence, are sufficient to sustain the decree. The fact that other allegations contained in the bill are not established by the evidence does not warrant a reversal. *Booth* v. *Wiley,* 102 Ill. 84; *Chicago West Division Railway Co.* v. *Mills,* 105 id. 63.

Appellant takes the position that the decree of confirmation in the foreclosure suit is an adjudication that Adams purchased the land in his individual capacity, and that, consequently, when the certificate ripened into a deed the grantee therein would necessarily take both the legal and equitable title, and reliance is placed on the case of *Hunter* v. *Stoneburner,* 92 Ill. 75, which is said to be identical in principle with the case at bar. That is a case in which the complainant, Stoneburner, filed a bill to set aside a sale and conveyance in partition of property in which he had owned an interest, and also to set aside a deed conveying the same property from the purchaser at the partition sale to Hunter. In the suit to partition the land he had been made a defendant while a minor. The principal ground upon which he based his claim for relief was the charge that his co-tenant fraudulently procured the commissioners in partition to report that the land was not susceptible of division. The land was sold under a decree in partition and purchased by the co-tenant at a grossly inadequate price, and by him

conveyed to Hunter, who was the owner thereof at the time the bill to set aside the sale was filed. The court held that even if there was fraud Hunter could not be affected thereby unless he had actual or constructive notice thereof. It will be perceived at once that the notice which was proven in the case at bar was wholly lacking in the *Stoneburner case.* The court properly held in that case that in the absence of either actual or constructive notice to Hunter of the fraud, he had the right to rely upon the decree of sale and the approval by the court of the report of sale as *res judicata.* One distinction between the two cases is, that in the case before us notice to the purchaser was proved; in the *Stoneburner case* it was not. The decree of confirmation here was an adjudication, binding upon all the parties to the foreclosure suit, that Frank Adams held the legal title. On the question whether he held the legal title for another or upon a trust arising by implication in favor of another, the decree of confirmation was no evidence whatever.

Adams testified on the part of appellees. On cross-examination appellant sought to show by him that no conspiracy existed to wrong or defraud the appellees. Complaint is made of the action of the court in sustaining objections to cross-interrogatories on this subject. This was not proper cross-examination. Moreover, the witness afterwards testified, during the same cross-examination, that it was not his purpose, nor the purpose of the officers of the bank, to defraud appellees by the transaction under investigation, so that appellant had the benefit of the witness' views on that subject.

We are of opinion the decree of the circuit court does equity between the parties, and it will accordingly be affirmed.                    *Decree affirmed.*