## Mississippi Lumber Company, Appellee, v. John K. Joice et al., Appellants.

### Gen. No. 16,095.

1. CORPORATIONS—*secret profits in organization.* Where one who has two options on a lumber mill, one for $35,000 and another for $60,000, interests others in forming a corporation to buy it, and, after a subscription agreement is signed, acting as "trustee," collects stock subscriptions and with the money purchases the lumber mill with other property for $60,815.75, and receives drafts from the vendors for.$25,000, which are turned over to a corporation of which he and two others are the chief stockholders, this corporation being a subscriber to the proposed corporation in the amount of $25,000, afterwards dividing the stock among the three stockholders, a bill in equity by the new corporation to recover such secret profits is properly sustained.

2. CORPORATIONS—*promoter liable for secret profits.* A promoter of a corporation, although not its agent, is a fiduciary and must account to the corporation for any secret profit.

3. CORPORATIONS—*where secret profits are purchased from a promoter.* Those who purchase secret profits from the promoter of a corporation, knowing them to be such, are liable with the promoter to the new corporation.

4. CORPORATIONS—*secret profits.* Where the promoter of a corporation retains secret profits, which are used to pay for stock in the new corporation, and the stock is sold at a profit, the original fund and the profit, with interest on both from the time the profit was made, may be recovered in equity by the corporation.

5. CHANCERY—*master's fees.* Master's fees will not be reduced as having been increased by his own delay where the delay is not shown not to have been occasioned by the parties.

Appeal from the Circuit Court of Cook county; the HON. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed December 30, 1912. Rehearing denied January 13, 1913. Petition for *certiorari* denied by Supreme Court making opinion final.

CHARLES E. POPE and D. A. CLITHERO, for appellants; JOHN S. MILLER, of counsel.

DEFREES, BUCKINGHAM, RITTER & CAMPBELL, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The bill was filed in this case in 1903 by the appellee, an Illinois corporation, hereinafter called complainant, to recover from the appellants, hereinafter called defendants, a secret profit by them made in the purchase by complainant of a lumber mill, timber rights, etc., in the State of Mississippi. The said defendants answered, as did also certain other defendants, Lowe, Deeves, Templeton and Miller. The said last-named defendants, hereinafter called cross-complainants, also filed a cross-bill claiming, as members of a certain syndicate organized to purchase the said described property and to form a corporation to take over said property, they were entitled to the said secret profits. The court dismissed the said cross-bill as not germane to the original bill and the said cross-complainants come here in another and separate appeal from that portion of the decree dismissing said cross-bill. The cause was referred to a master, and after hearing much testimony the master reported that the proofs sustained the original bill and recommended a decree in favor of complainant, and the chancellor confirmed said report and entered a decree accordingly, and from that decree this appeal is prosecuted.

On this record there is no question that the said defendants made and received in the transaction in question a secret profit of $25,000. The defendants insist that they were entitled to the said profit and should not be held liable to account to any one therefor; but that if it should be held that they were liable to account therefor, it should not be to the complainant, but to the syndicate claimed by them to have been organized to purchase said property and then to sell same to a corporation to be subsequently organized.

The material facts presented by this record, as we understand them, are substantially as follows: The defendant, D. S. Pate Lumber Co., was an Illinois cor-

poration with a capital of one hundred thousand dollars, conducting a general lumber business. Its stock was owned, except five shares, by the defendants, D. S. Pate, George J. Pope and John K. Joice, in substantially equal parts. Joice secured an option in writing dated November 17, 1899, good for thirty days, wherein Wetherbee Bros. of Quitman, Mississippi, agreed to sell a lumber mill, timber rights, etc., for the sum of $35,000, the time of which was subsequently extended by the Wetherbees or a renewal thereof secured; and whether an extension or renewal we deem immaterial. Joice also secured from the Wetherbees another option, so-called, the same in all particulars as the said $35,000 option, except the selling price therein stated was $60,000. Joice was attempting to make a sale of said property when, through W. R. Ransom, he began negotiations with the said Perley Lowe, C. F. Thompson and William Templeton, comprising the firm of Lowe, Templeton & Miller, also in the lumber business. There is much conflict of testimony in relation to the securing by Joice of the extension or renewal of his said option and the exact time and the details of his first meeting with Lowe *et al.* However, on a careful consideration of all the evidence relating thereto, we believe that the said extension or renewal was secured by Joice subsequent to his first talk with Ransom about interesting the Lowe firm in said property, and was secured in contemplation of negotiating with the Lowe firm and organizing a corporation to purchase the property. At a meeting of all the interested parties on January 11 or 12, 1900, Joice presented his $60,000, option and the negotiations culminated in the signing of the following instrument, previously prepared by Joice and by him claimed to have been drawn for use with other parties with whom he had been negotiating:

"For and in consideration of the sum of one dollar ($1.00) and the benefits to be derived, we, the undersigned, mutually agree to subscribe the amount set

opposite our names to the capital stock of a company to be incorporated for the sum of one hundred thousand dollars ($100,000). The primary reasons for the incorporation and the understanding is that the company purchase a certain timber contract and saw mill, as outlined in papers hereto attached.

"In event that total subscription is not made this agreement shall be null and void.

"As evidence of good faith we agree to pay to a trustee, appointed by the subscribers to this agreement, one per cent (1%) of the amount of our several subscriptions immediately upon notification of completed subscription.

"It is further agreed that the subscribers to this agreement, after subscription has been made in full, shall call a meeting and appoint a committee, for the thorough investigation of the timber lands, titles, etc., and if it is unanimously agreed by the subscribers, we then agree to pay within ten (10) days from date of notice, a second payment of fifty-nine per cent (59%) on our subscription. The balance of the subscription —forty per cent (40%) shall be subject to call at any time and payable within ten (10) days from date of notice. Payments shall be made to a trustee elected by the subscribers, same to be exchanged for capital stock of the company, which shall be issued as soon as company is organized.

"It is further agreed that the expenses of the committee appointed to examine the lands, titles, etc., shall be divided equally between the subscribers, according to their subscriptions.

"In event the purchase is not made, all subscriptions shall be returned to the subscribers.

| | |
|---|---|
| Lowe, Templeton & Miller, | $50,000 |
| ..................... Dollars. | |
| Pate Lumber Co. | $25,000 |
| ..................... Dollars. | |
| C. F. Thompson, Jr., | $15,000 |
| ..................... Dollars. | |
| W. B. Ransom, | $10,000 |
| | $100,000 |
| ................... dollars." | |

Ransom went to Mississippi and investigated the property and made a favorable report thereon. Joice also went to Mississippi and secured additional property from the Wetherbees to be included in the deal for additional compensation and valuable concessions from other parties in case the deal with the Wetherbees was consummated. Thompson and Lowe followed and many conferences were had and further negotiations, but Joice alone conducted all the negotiations with the Wetherbees, requesting Thompson and Lowe not to talk to them. Joice urged the closing of the deal and arrangements being made to include other property, on January 31 Thompson gave Joice a check to give the Wetherbees as the first payment on the contract, as follows:

"THE THOMPSON LUMBER CO.,
"Chicago, Jan. 31, 1900.
"Pay to the order of John J. Joice, trustee ($5,000) five thousand dollars.
"The Thompson Lumber Co.,
"By C. F. Thompson, Jr.,
"President.
"To Union National Bank,
"Chicago, Ill."

This check was endorsed by Joice personally and as *trustee* and delivered to the Wetherbees and by them accepted and collected, as the first payment on the $35,000 option held by Joice. At the time of the said payment the Wetherbees made and delivered to Joice what was designated a "Memorandum of Sale" as follows:

"Quitman, Miss., January 31, 1900.
"MEMORANDUM OF SALE.
"We hereby sell and guarantee to convey and transfer with perfect title and clear of all encumbrances to J. K. Joice all of the real and personal properties, also options and contracts covered by our option to the said J. K. Joice, dated November 17, 1899, and with supplement to same dated January 25, 1900. It being understood that whatever amount the inventory of the

commissaries shall run short of $6,000 the same shall be deducted from the total sum. The titles and transfers to be made to J. K. Joice, trustee, to be held in trust for individual interests.

"In consideration of the above we hereby acknowledge receipt of ($5,000) five thousand dollars. Balance of payment to be made as soon as papers are prepared and within (15) fifteen days from this date.

"Witnesseth our signatures.

"(Signed) C. P. Wetherbee.
"(Signed) W. C. Wetherbee.

"Witness:

"(1) J. G. Wetherbee, Jr.
"(2) J. E. Hand."

Thereupon Ransom took possession of certain of the premises and operated same under the name of "John K. Joice, trustee." The parties interested met in Chicago, February 5, and agreed that the capital stock of the proposed corporation be increased to $150,000, and authorized Joice to call for the payment of fifty per cent. of the said subscriptions. Joice then made the call by writing, and sending to the subscribers a letter of which the following is a copy, except as to names and amounts:

(Letterhead of D. S. Pate Lumber Co.)

"Chicago, February 6, 1900.

"Perley Lowe and Others, City.

"Gentlemen: On January 16th and February 5th you subscribed $75,000 to the capital stock of the Mississippi Lumber Co.

"At a meeting February 5th it was unanimously agreed that fifty per cent of the subscription was due and payable at call. Your proportion due is therefore $37,500, less cash paid January 16th, $250, balance due $37,250.

"Please make check payable to J. K. Joice, trustee.

"Respectfully yours,

"J. K. Joice,
"Trustee."

The said sum mentioned was paid him and he acknowledged same by the following:

(Letterhead of D. S. Pate Lumber Co.)

"Chicago, February 10, 1900.

"Received of Perley Lowe & Co. thirty-seven thousand five hundred & 00/100 dollars, which I hold as trustee for the Mississippi Lumber Company, and agree to transfer as directed by request of the directors of the company as soon as they are legally incorporated.

"J. K. Joice,

"Trustee.

"$37,500.00."

Other subscriptions were collected by Joice and on February 12th he paid of the money so collected to the Wetherbees the sum of $60,815.75, being the balance of the alleged purchase price of $60,000 and the price of the additional property included in the deal. This payment was made in six checks, five of which were signed "J. K. Joice, trustee," and one for $5,000 signed "D. S. Pate Lumber Co., J. K. Joice, Treas." At the same time Joice received from the Wetherbees New York drafts for $25,000, which he sent to the D. S. Pate Lumber Co., which amount was entered in its books to the credit of the Mississippi Lumber Co.; and the Pate Lumber Co. on February 15th apportioned its subscription of $25,000 of the capital stock of the Mississippi Lumber Co. to Pate $8,000, Pope $8,000 and to Joice $9,000. On the payment of the said $60,815.75 to the Wetherbees on February 12th, conveyances were made of a part of the premises to "J. K. Joice, trustee," and subsequently the remainder thereof as agreed upon were also conveyed to "J. K. Joice, trustee," all of which said premises were subsequently, after the organization of the Mississippi Lumber Company as a corporation, conveyed to it for a nominal consideration by "J. K. Joice, trustee."

A license was issued by the secretary of state to open books of subscription to the capital stock of the complainant corporation and the same was subscribed for under date of February 8th, as follows:

Mississippi Lumber Co. v. Joice, 176 Ill. App. 110.

| "NAMES. | SHARES. | AMOUNT. |
|---|---|---|
| Perley Lowe | 450 | $ 45,000 |
| C. F. Thompson | 225 | 22,500 |
| G. J. Pope | 80 | 8,000 |
| D. S. Pate | 80 | 8,000 |
| J. K. Joice | 215 | 21,500 |
| G. H. Deeves | 50 | 5,000 |
| Wm. Templeton | 150 | 15,000 |
| C. P. Miller by W. Templeton | 100 | 10,000 |
| W. B. Ransom | 150 | 15,000 |
| | 1,500 | $150,000." |

February 19th at a duly called meeting of said subscribers, Perley Lowe, C. F. Thompson, Wm. Templeton, J. K. Joice and D. S. Pate were elected directors and a report made thereof, as required by law, to the secretary of state, and a charter issued to said company and filed in the recorder's office of Cook county, Illinois, February 27, 1900. That the company was organized with a capital of $150,000, instead of $100,-000, as first arranged, we think is immaterial to the issues. Certificates of stock in the said company were thereupon issued, not in payment of the said premises purchased, but to the individual subscribers of the stock, equal to and in consideration of the amount paid by them on their respective subscriptions to Joice as trustee; and entries showing same made in the books of the complainant corporation under the direction of Thompson in consultation with Lowe, Templeton, Joice and Pope.

In August, 1902, Pate, Pope and Joice sold their 250 shares so received and paid for by them with the said $25,000 for $125 per share; and not until a short time prior to the filing of the bill herein did the cross-complainants and officers of the complainant learn that the said profit had been made by the said defendants.

The record is voluminous and the abstract thereof consists of over eight hundred pages. There was much conflict of testimony in respect to the issues involved, but it seems to us neither practical nor necessary to

state same more in detail. We have only attempted a brief summary of certain material facts we think established that will make the situation sufficiently clear to an understanding of the application of the principles of law we believe are here controlling.

On a careful study of the record we arrive at the conclusion that the money to purchase said property was paid to Joice as trustee. It was claimed by the complainant that when Joice began the negotiations in question his option had expired. This Joice denied. At any rate he secured its renewal or extension, and thereunder might have sold the property and been entitled to the profit resulting therefrom; but we are of the opinion that under all the facts and circumstances in evidence, the transaction was not a sale by Joice under his option, but was a purchase thereunder by him, acting in behalf of and representing others, and wherein he was, and termed himself, "trustee." While it may be true that he intended his position to be that of vendor, it is clear from the evidence that practically every paper drawn and every act done by him from the time of presenting the subscription agreement on January 11th or 12th was, and by himself so designated, in the capacity of and as a trustee; and under such circumstances he cannot in justice and equity escape the duties and responsibilities of such trusteeship.

Whether he was the trustee for the individuals as subscribers to a syndicate to purchase the said premises or trustee for the complainant, is perhaps not so clear. If the said syndicate, so called, did in fact make the purchase of said property and pay therefor, and then sell same to the complainant corporation, receiving payment therefor in the stock of the complainant, then, whatever might be the liability of the defendants to the members of the syndicate, it would seem there could be no liability herein to the complainant. If, however, the capital stock of the complainant was paid for in money to Joice, acting for

and representing the proposed corporation, and the money so paid him was used by him to pay for the said property, it would seem that any secret profit made in such transaction would be from the money belonging to the proposed corporation, and it might recover the secret profit so made, even though the property purchased would be worth the amount paid therefor, which seems to be the situation in the case at bar.

That there is no right of action in the complainant, much reliance is placed by the defendants in the cases of Old Dominion Copper Min. & S. Co. v. Lewisohn, 210 U. S. 206, affirming 79 C. C. A. 534, and Maxwell v. McWilliams, 145 Ill. App. 155. In the Lewisohn case, *supra,* the court held that the corporation knew all that was known to Bigelow and Lewisohn, who were selling the property to the company, and that there was therefore no concealment from the company of the facts; very different from the case at bar. In the Maxwell case, *supra,* as we understand it, the court found that Mr. Lord was given the money as agent for the subscribers, and the purchase of the property there in question was made by him for the said subscribers. As it seems to us, there is a marked difference in this case from the one at bar, unless of course the court should here find as a fact that Joice was acting for and on behalf of the subscribers to the agreement first mentioned as individuals, and that the said individuals, and not the proposed corporation, purchased the said property from the Wetherbees. The master found the said purchase was by the proposed corporation, and the chancellor found:

"That from January 12, 1900, it was the constant intention of the parties to organize a corporation; that it was the constant intention of all of the parties from then that the money paid by them should be paid for the capital stock of said corporation to be organized; that all of the money that was paid by all of the parties was in payment of the capital stock of 'the company,' and was in equity the property of 'the com-

pany;' that said Joice, as to all of the said money held by him, was in equity, trustee for 'the company.' ''

We are not inclined to hold to the contrary, and under such circumstances we think that the complainant is entitled to recover. Pittsburg Mining Co. v. Spooner, 74 Wis. 307; Woodbury Heights Land Co. v. Loudenslager, 55 N. J. Eq. 78; Hayward v. Leeson, 176 Mass. 310; Hinkley v. Sac Oil & Pipe Line Co., 132 Iowa 396; Lomita Land & Water Co. v. Robinson, 154 Cal. 36; Yeiser v. U. S. Board & Paper Co., 107 Fed. 340.

It is insisted by the defendants that Joice was not an agent of the proposed corporation because there can be no agency for a corporation not in existence. While that may be correct as a general rule of law, we do not think the principle applicable to the case at bar. We think the evidence proves that Joice was a promoter of the complainant; and it has been repeatedly held that a promoter of a corporation occupies a trust relation to it, and will not be permitted to retain a secret profit made by him in his sales or purchases for the proposed corporation. In 10 Cyc. 274, it is said: ''Although the promoters of a corporation are not its agents for the purpose of binding it by their acts and engagements, yet they are fiduciaries. * * * They are trustees in a sense which disables them from taking to themselves a secret profit made out of their trust to the detriment of the future corporation or its members; and they will be required to account for such profits to the corporation, to its shareholders, or to its receiver or representatives in insolvency proceedings.''

Thompson on Corporations (2d Ed.), sec. 103, discussing the duty of a promoter toward the corporation, says: ''They occupy in these respects a fiduciary relation, or a relation of trust and confidence, and this being the case they are bound by the same rules and principles that govern all persons acting in a fiduciary capacity or relation. It is now the settled law that

a promoter of a corporation stands in a fiduciary relation to the corporation of which he is a promoter.'' In section 104 the author states the rule that promoters are not entitled to secret profits; also in section 1234 that directors must account to the corporation for secret profits. It will be observed that Mr. Joice and Mr. Pate were both directors of the complainant upon its organization, and when the transactions in question were finally consummated.

Complaint is made that the decree is erroneous in holding Pate, Pope and the Pate Lumber Co. liable for the said secret profit. The evidence shows that Pate and Pope knew of the said secret profit and that it was deposited with the Pate Lumber Co. and by it apportioned among the said Pate, Pope and Joice. It being determined that the said Joice was a trustee of the complainant in the collection of the money paid in on the subscriptions for its stock and in the purchase therewith of the property in question for the complainant the secret profit made by him became a trust fund. In First Nat. Bank of Metropolis v. Leech, 207 Ill. 215, the court, citing many authorities in support thereof, quote the rule we think here applicable, as follows: ''The doctrine is, that a purchaser with notice of a trust, either express or implied, becomes himself a trustee for the beneficiary with respect of the property, and is bound in the same manner as the original trustee from whom he purchased,—and this even though he is a purchaser for a valuable consideration.''

It is claimed that the master's fees allowed by the court are exorbitant and unreasonable. The arguments were heard by the master in July, 1905, and he did not begin to prepare his report until May, 1907. The defendants say that a great amount of time taken by the master in the preparation of his report, and for which he charged and the court allowed, was necessarily occasioned by his own delay in taking up and making his report, which contained a recital of certain testimony, many findings and his reasons there-

for. The defendants' argument appeals to us and we would be inclined to sustain the objection to the decree in this respect if we found any evidence in the record, which we do not and none is pointed out to us, that the delay of the master of nearly two years before he began the preparation of his report, was not caused by the parties or either of them, but was his own fault.

With the said $25,000 secret profit the defendants paid on their subscriptions to the capital stock of the complainant and Joice, Pate and Pope received therefor 250 shares of said stock. About September 1, 1902, they sold this stock for $31,250, making a profit of $6,250. The decree provided: "That complainant, the Mississippi Lumber Company, is entitled to have and recover from the defendants, Davey S. Pate, John K. Joice and Geo. J. Pope, the sum of thirty-one thousand two hundred and fifty dollars ($31,250) with interest at the rate of five (5) per cent per annum, on twenty-five thousand dollars ($25,000) of said amount, from February 15, 1900, to this date, and on sixty-two hundred and fifty dollars ($6,250) of said amount from September 1, 1902, to this date, being a total of forty-four thousand seven hundred ninety-nine and 24/100 dollars ($44,799.24), which said amount of money the said defendants, Davey S. Pate, George J. Pope and John K. Joice are hereby directed, ordered, adjudged and decreed to pay to complainant, within ten (10) days from this date, and that in default of said payment that execution issue therefor."

The defendants contend that a recovery should not be allowed for both interest and profits. It will be observed that the decree gives the complainant $6,250, the profits from the investment of the said $25,000 made from the date thereof, February 15, 1900, to September 1, 1902, when the stock was sold, and also interest on the said $25,000 "from February 15, 1900, to this date." In other words, the complainant is given both the interest on said $25,000 from February

15, 1900, to September 1, 1902, and the profits made therefrom during the said time. We think it well settled that the *cestui que trust* is entitled to either the profits or the interest, but not to both. It is evident from the record that its choice was the profits, and those will be allowed. The interest on the said $25,000 at five per cent. from February 15, 1900, to September 1, 1902, is $3,177.05, and should not have been allowed the complainant. The decree is modified by deducting the said $3,177.05 from the amount allowed therein to the complainant, and as so modified it is affirmed and the complainant taxed the costs of this appeal.

*Affirmed.*