Opinion delivered June 3, 1887.

No. 5660.

## D. H. & C. H. McClure v. Heirs of G. W. Sheek.

1. Agreements of Counsel—Continuance.—An agreement of counsel in regard to the trial of a cause will not be always observed by a court, although it may be in writing, and is not to be treated as a contract to be enforced under all circumstances.    Such an agreement may be set aside by the court, in the exercise of a sound discretion, when its enforcement would result in serious injury to one of the parties, and the other party would not be prejudiced by its being disregarded.    See opinion for an agreement of an attorney to continue a cause, made without the knowledge of his client, who disapproved thereof and employed other counsel, which agreement was properly disregarded by the court.

2. Witness—Depositions.—When a witness is in attendance upon court, and is held under the rule during the trial of the cause, his deposition, formerly taken, can not be read.

3. Evidence.—When, in a question involving the ownership of cattle, evidence had been offered that they had been rendered for assessment in the name of one not a party to the suit, who was in charge of them, it was held admissible for the adversary, who denied the ownership of such property, to show a local custom to render cattle in the name of the person in charge of them, without regard to the real ownership.

4. Marks and Brands—Statute Construed.—Though the statute (Rev. Stats., art. 4556) provides that an individual shall have but one mark and brand for his cattle, yet, if cattle be removed by the owner from a county in which his brand is recorded, and from any reason he causes

to be recorded a different brand in the county to which the cattle are removed, the new brand does not invalidate the old one, nor deprive the owner of any benefit accruing from its registration.

5. Fraud—Collateral Security.—An insolvent debtor has the right to transfer a debt due himself as a collateral, to secure his debt to another, and a reservation to himself in the transfer, of any balance that may remain after the satisfaction of his own debt, does not render the transfer fraudulent. The validity of such a transfer and reservation depends on the good, faith which influenced the insolvent to provide for a bona fide debt which he proposed to pay, and the absence of intent to hinder, delay or defraud other creditors. The reservation of the right of the debtor to receive the balance remaining, after payment of the debt, does not of itself render the transfer fraudulent.

6. Assignment of Error.—An assignment of error which declares that "the court erred in refusing instructions, as shown by bill of exceptions," will not be considered, and can not be aided by a bill of exceptions which contains a general exception to the action of the court in refusing to give the special charges asked.

Appeal from Baylor. Tried below before the Hon. J. V. Cockrell.

This action was a trial of the right of certain property in cattle claimed by the appellant to belong to one J. W. Sheek, and claimed by the appellees to belong to their ancestor George Sheek. The trial resulted in a judgment in favor of the appellees, from which appellants prosecute an appeal.

In addition to the facts contained in the opinion, it may be stated that there was evidence that Horton Williams executed his note to *George* Sheek for two thousand seven hundred dollars, and delivered it to *J. W.* Sheek. The consideration of the note was a farm bought by Williams from J. W. Sheek; *George* Sheek was not present at the time. This note went into the hands of *George* Sheek, and he subsequently received part of the cattle in controversy on the note of Martin Layne, who, at the request of *J. W. Sheek* and Horton Williams, had substituted his (Layne's) note for the one executed by Horton Williams, payable to G. W. Sheek.

There was evidence that J. W. Sheek had stated that he had the Horton Williams two thousand seven hundred dollar note executed to G. W. Sheek to secure him in the purchase price of a pair of mules, six hundred dollars, and after he was paid, the balance to go to pay another brother, James Sheek, if he were not paid out of some other notes and accounts which he had in his hands to secure him; that his brother James was paid out of

the other secureties, and then that J. W. Sheek gave his widowed sister a home worth five hundred dollars out of the balance, or a part of it. The court instructed the jury that J. W. Sheek had the right to give his sister a home out of the proceeds of the note, as a compensation for her care and maintenance of his children. The plaintiffs asked an instruction in substance that J. W. Sheek could not preserve interest in the notes and then give it away to the exclusion of his creditors.

In order to show title, defendants offered in evidence a copy of an SK brand, recorded in Palo Pinto county by George Sheek, recorded on twenty-fourth of March, 1875; also, a brand recorded by him in Jack county on July 2, 1887—(WSE) on right side and S on neck; also, a copy of the record of marks and brands recorded in Baylor county, nineteenth of September, 1885.

*Taylor, McCall & McCall* and *A. M. Jackson,* for appellants, cited 22 Texas, 709; Revised Statutes, articles 4332, 4334, 4341, 4562.

*Duncan G. Smith,* for appellee, on the effect to be given the argument of counsel, cited Hancock v. Winans, 20 Texas, 330.

On the exclusion of the depositions of a witness who was present, he cited Revised Statutes, article 2234; Elliott v. Mitchell, 28 Texas, 105, and Boetge v. Landa, 22 Texas, 105.

As to the admissibility of evidence of custom in rendering cattle for taxation, he cited Meaher v. Lufkin, 21 Texas, 392.

On the question of fraud he cited Thornton v. Tandy, 39 Texas, 544; Van Hook v. Walton, 28 Texas, 59; Baldwin v. Peet, 22 Texas, 717.

Gaines, Associate Justice. The court did not err in overruling appellant's application for a continuance. Before the term of the court at which the case was tried the attorneys for appellant had telegraphed the attorney for appellees asking that the cause be continued by consent, and had received an answer through the same channel, granting the request. Appellees hearing of this, and not being willing to continue for the term, appeared at court on the first day and employed other counsel, and had notice given to appellant's attorneys that they would not carry out the arrangement. On the fifth day of the first week the case was called for trial, and appellants, who were plaintiffs in the court below, asked that the case be continued

under the agreement. Appellees resisted the motion on the ground, that they had not authorized the agreement by their attorney, and that it was greatly to their prejudice; and thereupon the court set down the case for trial on a day of the third week of the term.

Upon the case being called upon the day set down, plaintiffs presented an application in writing for a continuance of the cause on account of the agreement, and defendants filed an affidavit resisting the application, setting forth that the agreement was made without their consent, and facts showing that it was greatly to their prejudice to continue the cause to another term. Plaintiffs did not show that they were not ready for trial, nor did they show that the agreement had operated in any manner to prevent their being ready.

Agreements of counsel in regard to the trial of a cause are not absolute, although in writing, and are not to be treated as contracts to be enforced under all circumstances. They may be set aside by the court in the exercise of a sound discretion when their enforcement would result in serious injury to one of the parties, and the other would not be prejudiced by its being set aside. (Hancock v. Winans, 20 Texas, 320.) Here defendants showed that the continuance of the cause was likely to result in the loss of the cattle, which were the subject matter of the litigation, and plaintiffs showed no grounds for a continuance except the naked agreement.

Neither did the count err in excluding the deposition of the witness Martin Layne. The bill of exceptions shows that the witness was in attendance upon the court at the time and was held under the rule. That a deposition can not be read under such circumstances over the objection of the adverse party is expressly decided by this court in the case of Randall v. Collins, 52 Texas, 435. The question in that case arose under the act of 1879 (Revised Statutes, art. 2218, note); and the ruling is in accordance with the former decisions of the court under the previous law. (Elliott v. Mitchell, 28 Texas, 105; Boetge v. Landa, 22 Texas, 105.)

It was not error to exclude the testimony of McClure as to a declaration made to him by one of the party who were driving a portion of the cattle, to the effect that the cattle they were driving belonged to J. W. Sheek. Plaintiffs claimed that the cattle in controversy were the property of J. W. Sheek. He was in control of a number of cattle bearing the same brand when

the declaration was made; but we infer he was not immediately present. But whether present or not, the declaration was inadmissible. He could not by his own declaration have made evidence in favor of his own right against G. W. Sheek, under whom defendants claim, nor could a third party do so for him. Hence, plaintiffs who claim through him could not avail themselves of such declarations. The evidence was strictly hearsay and was properly excluded.

Appellants by their fifth assignment allege that the court erred in permitting a witness to testify that it was the custom of the country for persons having charge of cattle belonging to other persons to render the property for assessment in their own names. Plaintiffs had shown that J. W. Sheek had given in to the assessor the cattle in his own name. This evidence was offered as a circumstance tending to show that they were J. W. Sheek's cattle. Now, if it were true that such a custom existed in that county, this fact was calculated to weaken the force of the circumstance which plaintiffs had proved, and was, therefore, good evidence for defendant in rebuttal. It was explanatory of a suspicious circumstance against defendants, and was, therefore, admissible without reference to any question whether such custom was lawful or unlawful. The witness was the assessor of the county, and was in a position to have known the fact about which he testified. We conclude the court did not err in admitting the evidence.

The proposition under the sixth and seventh assignments of error is that "the court erred in admitting the pretended copies of brands of G. W. Sheek in Palo Pinto and Jack counties, because they showed different brands in each county, and because the law allows but one mark and one brand for one person."

It is true that the statute provides that a party shall have but one mark and brand (Revised Statutes, article 4556); but this was not intended to prohibit a stock owner from changing them. The bill of exceptions to the introduction of the record from Palo Pinto was based upon the grounds, *first*, that the record was a mere recital of the mark and brand ostensibly made by the clerk, and second, that it appeared that G. W. Sheek had another brand in Parker county. It is sufficient to say in regard to the first objection that the entry upon the record book showed distinctly the brand and mark claimed by G. W. Sheek, and that this attained all the purposes of the law. Its form was

a matter of no importance otherwise.  As to the second ground, the bill of exceptions shows that the Palo Pinto brand was recorded in 1875, and the Parker county record was not made until 1880, long after the cattle in controversy had been removed from that county.  We do not see that the latter record invalidated the former.  A different brand from that of record in Palo Pinto was registered in Jack county in 1877.  The evidence shows that the brand was changed to that recorded in the latter county after the cattle were removed there, and that this was made necessary by others claiming the former brand in that county.  We see no error in admitting the evidence.

 The other assignments relate to the giving and refusal of charges.  It appears, that in 1872, J. W. Sheek sold a tract of land for two thousand seven hundred dollars, of which seven hundred dollars was paid.  J. M. Layne, a debtor of Sheek's vendee, assumed to pay the balance in cattle.  It was agreed that this debt should be paid to G. W. Sheek, a brother of J. W. Sheek, and the debtor executed an obligation to him.  J. W. Sheek was then insolvent and owed the debt, upon which the judgment was obtained which plaintiffs in this proceeding are seeking to enforce.  Defendants claim and the evidence shows, that at the time of the transfer of the debt to their father, G. W. Sheek, by J. W. Sheek, the latter was indebted to the former in the sum of six hundred and ninety-six dollars, and that the transfer was made to secure this debt, and that the balance when collected was to be paid on a debt of three thousand dollars J. W. Sheek owed to J. S. Sheek, another brother, provided the last named creditor was not paid out of certain collaterals he then held.  When the obligation for the cattle fell due, Layne made a bill of sale to G. W. Sheek to fifty-eight head of cattle valued at six hundred and ninety-six dollars, which discharged the debt due from J. W. Sheek to G. W. Sheek, which the transfer was intended to secure.  J. S. Sheek having collected his debt from the collaterals, Layne paid the balance to J. W. Sheek, who, as he testifies, appropriated a part of it in the payment for a home for his sister, to whom he felt under obligation for having taken care of his children, and paid the balance upon his debts.

The bill of sale was dated in 1874, ten years before the levy was made which gave rise to the trial of the right of property in the court below.  The cattle levied upon were in part at least, the cattle transferred by the bill of sale and their increase. There was evidence on part of appellants tending to show that J.

W. Sheek had had the management and control of the cattle until 1883, and that he had exercised acts of ownership over them. This was rebutted by showing that he was managing the cattle for G. W. Sheek, who was physically unable to attend to them, and that he received the value of a third of the calves for his services.

Under this state of case, the court instructed the jury, in the sixth paragraph of the charge, that, in order to subject the property levied upon to plaintiff's debt, they "must believe from the evidence that J. W. Sheek was the actual owner of the property." This is assigned as error. Under the issues tendered by plaintiffs, their case presented two phases: First. That the bill of sale was made to G. W. Sheek for J. W. Sheek's benefit, and that, while the former was the ostensible owner, the latter was the actual owner; and second, that though it was intended by the transfer to convey the absolute title to G. W. Sheek, yet it was made in fraud of the rights of J. W. Sheek's creditors, and was therefore void as to them. The instruction complained of presents very accurately the issue made by the first phase of the case; and, taking the whole charge together, it is very evident that the court intended to apply it to that issue alone. It would perhaps have been more satisfactory if the court had expressly limited it, but we hardly think the jury could have been misled by the failure to do so. The next succeeding paragraphs of the charge are devoted to very full instructions upon the question of fraud, and in the main are very favorable to plantiffs.

In the seventh paragraph, the court instructed the jury that, if G. W. Sheek bought the cattle with the intent to hinder, delay or defraud the creditors of J. W. Sheek, they should find for plaintiffs; and it is complained that the charge should have been that, if J. W. Sheek sold the cattle to G. W. Sheek with the intent to defraud his creditors, and the latter knew the intent, or could have known it by reasonable inquiry, then the jury should find for plaintiffs. A charge embracing this last proposition was asked and refused.

The charge requested presents the law more directly and would have been better than the charge actually given. But the fairness of the original transfer of Layne's obligation from J. W. Sheek to G. W. Sheek is not put in issue by the pleading of plaintiff. It is only the bill of sale that is alleged to be fraudulent; and it would seem from the facts surrounding that transaction that if J. W. Sheek's intent was fraudulent, G. W. Sheek

must have known it and have participated in it. We think it unnecessary to have told the jury that if G. W. Sheek "could have known the intent by reasonble inquiry" as requested, because he must have known it, if it in fact existed, and it may be doubted whether the charge given was not equivalent to an instruction, that a fraudulent purpose on part of J. W. Sheek and a knowledge of it on part of his brother, was sufficient to avoid the transaction as to creditors.

But if the charge here complained of be erroneous, it does not follow that the judgment must be reversed. The question arises, have appellants been prejudiced by the error, if error it be? Would the evidence have warranted the jury in finding the transaction fraudulent? If the court would have set aside the verdict if they had so found upon that issue, then the error is harmless, and the verdict as it stands will not be set aside on that account. This leads us to consider the evidence bearing upon the question of fraud in the transfer of the cattle by the bill of sale. That J. W. Sheek, though insolvent, had the right to prefer his creditors, can not be questioned. His right to transfer a debt due him collaterally to secure his brothers is equally clear, provided his intent was merely to secure them, and not to hinder, delay or defraud his other creditors, although the effect of this may have been to place the property beyond the reach of the latter.

His reservation of the balance to himself in the event it was not required to pay J. S. Sheek does not make the transaction fraudulent. Such a reservation is a distinctive feature of all pledges and mortgages, which, as is well settled, may be made by insolvent debtors, even of the whole of their property, for the purpose of securing such creditors as they may wish to prefer. (Stiles v. Hill, Fontaine & Co., 62 Texas, 429; Watterman v. Silberberg, 67 Texas, 100.) Plaintiffs introduced no evidence of any fact existing or occurring at the time of the transfer of the debt to show a fraudulent intent on part of the transferrer, except the relationship of the parties. This alone was not sufficient to overcome the presumption of fairness. Neither was there anything to show fraud in the bill of sale, provided the witnesses were to be believed, who testified distinctly and clearly to the facts that J. W. Sheek owed his brother six hundred and ninety-six dollars, and that in accordance with their original agreement at the time of the transfer of the debt on J. M. Layne, the bill of sale was made to satisfy the claim due

G. W. Sheek. It appears that after the latter was paid, the other debt secured by the transfer having been discharged from another source, the balance was turned back to J. W. Sheek, and was disposed of by him without the control or participation of G. W. Sheek. This was strictly in accordance with the law. The latter having recovered the debt secured by the collateral, the balance that remained after this payment belonged to the transferrer, and was subject to his disposition and control. What he did with this could not affect G. W. Sheek's rights, and even if he had placed it unlawfully beyond the reach of his creditors, this would not have avoided the bill of sale.

It follows from what we have said that if plaintiffs could have recovered at all, they must have recovered upon the theory that J. W. Sheek owed G. W. Sheek nothing; that the alleged debt was a mere pretext; that the bill of sale was made to the latter for the former's benefit, and that all the time, J. W. Sheek was the real, or as the court expressed it, the *actual,* owner of the property. This was the true issue made by the evidence, and this was very distinctly presented in the sixth paragraph of the charge heretofore discussed.

The other grounds for exception to the charge relate to the question of fraud in the bill of sale, even if made for a bona fide debt and good between the parties; and we deem what we have said sufficient to dispose of them. We will say, however, that whether J. W. Sheek's appropriating a part of the money received of Layne in payment of land for his sister, was legal or not, it did not affect the rights of the parties in this case, because G. W. Sheek is not shown to have had any connection with that transaction. And it may be remarked that the fact that Layne transferred to the latter only about one-third of the cattle due by his obligation, tends to show that the bill of sale was not for the purpose of covering up the property for the benefit of J. W. Sheek. If this had been the object, it does not appear why the whole was not transferred in the same manner, no reason appearing in the evidence why this could not have been done. It would seem the object was simply to pay G. W. Sheek's debt.

The eighth assignment, which we have had under discussion, is to the effect that the court erred in its charge and in refusing instructions as shown by bill of exceptions. It may be doubted whether this be not too general for any purpose. But the bill of exceptions points out specifically the objections to the general charge, and we have, therefore, considered such of them as

called for discussion. The bill, however, excepts generally for refusing to give the special charges asked by plaintiffs. This does not aid the generality of the assignment, and under the rules of this court and its uniform practice, the action of the court upon the request for their instructions will not be considered.

In conclusion, it may be said that the witnesses J. W. Sheek and John L. Sheek so fully and clearly explained the whole transaction, and so satisfactorily explained the circumstances proved by plaintiff to show the title in J. W. Sheek, that if the jury believed them, the verdict could not have been different. The record discloses no reason why they should not have been believed; and we think it must be inferred from the finding that the jury gave their testimony full credit; and we are of the opinion that they were not misled by the alleged imperfections in the charge which have been assigned as error.

The evidence as disclosed by the record was overwhelmingly in favor of the appellees, and we do not think the verdict should be disturbed. The judgment is therefore affirmed.

*Affirmed.*