### In re TENGWALL CO.

### FALLOWS v. CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK.

#### (Circuit Court of Appeals, Seventh Circuit. October 8, 1912.)

#### No. 1,811.

1. EXECUTION (§ 96*)—AUTHORITY OF OFFICER TO MAKE LEVY—DELIVERY FOR "SERVICE."

While delivery of an execution to a sheriff, to be effective, must not be a limited delivery, a delivery for "service" is an unlimited delivery, and makes it the duty of the officer to obey the commands of the writ, and do all acts necessary to realize the money called for thereby.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 173; Dec. Dig. § 96.*

For other definitions, see Words and Phrases, vol. 7, pp. 6432, 6433.]

2. CHATTEL MORTGAGES (§ 196*)—VALIDITY OF LIEN—FAILURE TO FILE EXTENSION AFFIDAVIT.

Under Hurd's Rev. St. Ill. 1909, c. 95, § 4, providing that, by filing an affidavit with the recorder within 30 days prior to the maturity of the debt secured by a chattel mortgage, the lien of the mortgage shall be extended not to exceed one year from the date of such filing, on the expiration of the year the lien ceases to be valid as against creditors of the mortgagor, and cannot be revived by the subsequent filing of a new affidavit so as to give it priority over liens thereafter acquired by such creditors.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 429, 438–441; Dec. Dig. § 196.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

In the matter of the Tengwall Company, bankrupt. From an order sustaining objections to his claim as a secured debt, Edward H. Fallows, trustee, appeals. Affirmed.

From the report of the referee it appears that on June 4, 1910, Barnhart Bros. & Spindler, among others, filed their petition praying that the Tengwall Company be declared a bankrupt; that on June 17, 1910, said company was adjudicated a bankrupt; that on August 9, 1910, said trust company was duly chosen and qualified as trustee; that on the same day appellant filed his claim as a secured creditor, basing the same upon a mortgage; that certain creditors having obtained judgments and executions, and placed the same in the hands of the sheriff for service within the four months period, the trustee filed its petition asking for an order preserving the liens of such creditors for the benefit of said bankrupt estate and for the subrogation of the trustee in bankruptcy to the rights of the judgment creditors; that on August 22, 1910, appellant filed his answer to said petition; that on the same day said answer was found to be insufficient by the referee, and the trustee in bankruptcy was subrogated to the rights of the execution creditors as prayed, to which order appellant saved an exception; that thereafter the trustee in bankruptcy filed objections to appellant's alleged secured claim; that said claim was based upon 200 bonds for $100 each—$20,000—bearing 5 per cent. interest, and maturing October 1, 1920, and secured by mortgage dated October 7, 1905, conveying to appellant as trustee the franchises, licenses, and articles of personal property, goods, chattels, viz., all the franchises, licenses, rights, and privileges of running and operating its plant, also all the fixtures, implements, goods, wares, and merchandise, and all other articles of personal

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property now belonging to and in the possession of said company. The Tengwall Company was given leave to alter any of the machinery, fixtures, or other equipment, and substitute new, which, when substituted, should forthwith become subject to the lien of the mortgage. It further appears that on or about November 9, 1905, the Tengwall plant was partially destroyed by fire, for which fire insurance was collected, and, with appellant's consent, employed in replacing the said machinery, fixtures, stock in trade, etc., which was burned; that with the exception of said stock in trade said plant remained in the possession of the Tengwall Company practically unchanged from the time of replacement until taken possession of by the trustee in bankruptcy, except as to certain repairs and two printing presses subsequently added; that the property was sold clear of liens, including that of appellant, and the same were relegated to the proceeds; that the sale aggregated $24,134.03, of which sum, the proceeds of the stock in trade amounted to $5,000, the good will, $1,800, the patents, $600, and the balance was realized on the equipment, etc. The referee further finds that the bankrupt had always recognized the validity of said mortgage and paid the interest on said bonds; that appellant filed his motion to set aside the order of August 22, 1910, which was denied; that the trustee in bankruptcy filed objections to appellant's claim, as aforesaid, alleging as ground therefor that on October 5, 1908, just before the expiration of the three years, during which the chattel mortgage was a valid lien, appellant filed an affidavit in the recorder's office in compliance with the statutes of Illinois for the extension of the mortgage debt. It is assumed that it was the intention to extend the lien of the mortgage, since the debt was not due.

It further appears that on October 6, 1909, another and similar affidavit was filed to secure a second extension. It was the contention of the trustee in bankruptcy that the Illinois statute makes no provision for a second extension, and that, in any event, the affidavit was not filed in time; that it should have been filed within the year ending October 5, 1909, and the referee so held. He also held that the chattel mortgage had ceased to be a lien as against third persons after October 5, 1909; that the liens of the creditors' judgments were valid and inured as such to the trustee for the benefit of the creditors, as against the chattel mortgage.

Thereafter appellant filed his petition for a review, which the referee granted. The grounds relied on in the petition are: (1) That appellant's answer to the petition for subrogation was sufficient, and constituted a good defense thereto; (2) that the action of the referee in that respect was an abuse of discretion, and contrary to law; (3) that the referee erred in holding that appellant's second affidavit for an extension was not filed in time, and (4) in holding that appellant's lien was not superior to that of the execution creditors.

On the hearing of said petition for review, the district court denied the same, and approved the referee's report. Exceptions to the order of the district court were filed and overruled, and this appeal resulted. The errors assigned are:

(1) The court erred in sustaining the order of the referee preserving said execution liens and subrogating the trustee as aforesaid.

(2) The court erred in not holding that the referee had abused the discretion lodged in him by statute.

(3) The court erred in affirming the order of the referee sustaining the trustee's objection to the validity of appellant's lien.

(4) The court erred in not setting aside the order for subrogation. Further facts appear in the opinion.

Edwin H. Cassels, Edward J. Brundage, and Francis Adams, Jr., all of Chicago, Ill., for appellant.

Herman Frank and Percy B. Davis, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). This is a controversy to determine which of two liens is entitled to priority against the property of a bankrupt. Appellant, as trustee, represents the holders of 200 bonds for $100 each, bearing interest at the rate of 5 per cent., dated October 7, 1905, and maturing October 1, 1920, secured by a chattel mortgage on all the plant of the bankrupt, including the stock in trade. It will be noted that the indebtedness runs for a period of practically 15 years, while under the laws of Illinois a chattel mortgage is valid for only three years. In their efforts to keep said bonds secured, the parties resorted to the provisions of section 4 of chapter 95, Hurd's Revised Statutes of Illinois, wherein it is provided that by filing in the recorder's office and with the justice of the peace who took the acknowledgment an affidavit within 30 days of the maturity of the debt, setting forth the mortgagee's interest in the mortgaged property, and the amount remaining unpaid thereon, and the time when the same will become due by extension or otherwise, "the lien of the mortgage shall be continued and extended for and during the term of one year from the filing of such affidavit, or until the maturity of the indebtedness or extension thereof secured by said mortgage, provided such time shall not exceed one year from the date of filing such affidavit." This affidavit was filed on October 5, 1908. Thereafter, and on October 6, 1909, a second and similar affidavit was filed. On the strength of these renewals, appellant contends that his mortgage constituted a valid lien at the date of the institution of bankruptcy proceedings.

Appellee represents, inter alia, the rights of the bankrupt's creditors acquired under and by virtue of several executions issued upon judgments obtained by certain creditors and placed by them in the hands of the sheriff for service, to the claims of whom appellee has been subrogated under the provisions of section 67c of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]). It appears that on June 3, 1910, six judgments, aggregating more than $25,000, were entered by confession in the superior court of Cook county on judgment notes that day executed by the bankrupt. Upon these executions were at once taken out and placed in the hands of the sheriff, according to the petition. The referee finds they were so placed for service. They never were served, as the bankruptcy proceedings were instituted on June 4, the next day.

It is appellant's contention that these executions never became a lien, that they were secured through connivance of the parties, were never placed in the sheriff's hands for service, but to be held by him. While the transaction bears some evidence of an intent to take advantage of the delay of appellant in securing an extension of his lien, there is no claim that the sums represented by the judgment notes were not just claims, and we are not at liberty to disregard the finding of the referee that the executions were placed in the sheriff's hands for service.

[1] Appellant distinguishes between executions placed in the sheriff's hands for service and those placed there to be executed. Undoubtedly, the delivery to the sheriff must not be a limited delivery. Hurd's Revised Statutes of Illinois (1909) p. 1364; Gilmore v. Davis, 84 Ill.

487; Western Union Cold Storage Co. v. Rose, 60 Ill. App. 452; 2 Freeman on Executions (3d Ed.) § 206, p. 1030.

In the present case, however, there is an utter lack of evidence preserved in the record to show any attempt on the part of the judgment creditors to limit the duty· of the sheriff. The Illinois statute seems to contemplate two duties on the part of the sheriff in regard to executions placed in his hands: (1) Serving of notice of execution; (2) levying. Hurd's Revised Statutes of 1909. In Cook v. Scott, 1 Gilman (Ill.) 333, Davis v. Chicago Dock Co., 129 Ill. 180, 21 N. E. 830, Bingham v. Maxcy, 15 Ill. 290, Boggess v. Pennell, 46 Ill. App. 150, and Hamilton v. Quimby, 46 Ill. 90, it is held that it is the duty of the sheriff to serve notice thereof and make a demand upon the debtor before making a levy. Appellant cites these in support of his contention that service does not include levy. We think, however, that in the present case the two are identical. In Peck v. City National Bank,. 51 Mich. 353, 16 N. W. 681, 47 Am. Rep. 577, it is said:

"Service of an execution includes every act and proceeding necessary to be taken by the sheriff to make the money and includes the sale of the property when necessary."

The word has been defined to mean "execution of process." 35 Cyc. 1432. This construction seems to us reasonable in the case before us. It would be placing a strained meaning upon the transaction to hold that, when a party places an execution in the hands of a process officer, the latter is not charged with the duty, without further instructions, to proceed to make the money called for by the writ, which itself commands him to do so. In the absence of directions not to levy, it is the duty of the officer to obey the directions and commands of the writ. Nor is the duty waived by refusal of plaintiff to give directions. Koren v. Roemheld, 6 Ill. App. 275; Sweetser v. Matson, 153 Ill. 568, 39 N. E. 1086, 27 L. R. A. 374, 46 Am. St. Rep. 911; 17 Cyc. 1058.

[2] We therefore hold the liens of the executions here involved to be valid as against the bankrupt as of June 3,. 1910. The last attempt at an extension of appellant's lien was on October 6, 1909, so that there is no question of liens attaching during the period intervening the first and second renewals. If it was within the power of the appellant to reinstate the mortgage lien after it had expired by again filing the affidavit required by the statute in order to secure the first extension, then its lien was valid as against the executions. The matter is therefore narrowed down to the question whether appellant acquired a lien valid against subsequent execution liens by taking action a day after the prescribed period for such action. It is a well-settled rule of law that the statute in regard to chattel mortgages is in derogation of the common law, and should be strictly followed. Porter v. Dement, 35 Ill. 478. This has been applied to extensions. Griffen v. Henry, 99 Ill. App. 284. There can be no doubt but that the statute requires the extension in any case to be effected during the life of the mortgage. The language is unmistakably clear. No reason is perceived why this requirement should not be vital. It has been so held. In re New York Economical Printing Co., Bankrupt, 6 Am.

Bankr. Rep. 617, 110 Fed. 514, 49 C. C. A. 133 (2d Cir. Ct. of Appeals); Jones on Chattel Mortgages (5th Ed.) p. 287. The latter states:

"A chattel mortgage which has ceased to be valid by a failure to file it as required by law cannot be revived by any act of the parties so as to give it priority over other liens."

It is further supported by Seaman v. Eager, 16 Ohio St. 209; Nitchie v. Townsend, 4 N. Y. Super. Ct. 299.

As between the mortgagor and mortgagee, no recording is necessary. As we construe the mortgage act, appellant had nothing more than an unrecorded chattel mortgage. As regards third persons, he had no lien or priority. As between his mortgage and the lien of the executions here under consideration, his rights were secondary.

The decree of the District Court is affirmed.