### HARRISON v. ORR.　(No. 916–4684.)

Commission of Appeals of Texas, Section A. June 25, 1927.

**1. Limitation of actions ⬤⇒95(1)—Limitations did not run against owner until he learned, or ought to have learned, of existence of tax judgment (Rev. St. 1925, art. 5529).**

Four-year limitation period under Rev. St. 1925, art. 5529, did not commence to run against owner until he learned, or by use of due care ought to have learned, of existence of tax judgment under which claim was made.

**2. Limitation of actions ⬤⇒195(3)—One claiming under tax judgment has burden of proving owner's knowledge of existence of judgment for period of limitation (Rev. St. 1925, art. 5529).**

One claiming under judgment in tax suit has burden of proving that owner knew, or in exercise of due care ought to have known, of existence of judgment for four-year period of limitation under Rev. St. 1925, art. 5529.

**3. Limitation of actions ⬤⇒199(1)—Evidence as to owner's knowledge of tax judgment for limitation period held for jury (Rev. St. 1925, art. 5529).**

Evidence as to owner's knowledge of existence of tax judgment against property for four-year period of limitations under Rev. St. 1925, art. 5529, held for jury.

**4. Taxation ⬤⇒647—Order of sale under tax judgment improperly recited personal liability against owner, where such liability was not adjudicated (Rev. St. 1925, art. 3783).**

Under Rev. St. 1925, art. 3783, order of sale under tax judgment in referring to judgment improperly recited personal liability against owner, where such liability was not adjudicated in tax judgment.

**5. Taxation ⬤⇒647—Order of sale under tax judgment was improperly indorsed to effect that clerk had earned fee because of compromise of suit (Rev. St. 1925, art. 3783).**

Order of sale under tax judgment improperly indorsed pursuant to Rev. St. 1925, art. 3783, statement to effect that clerk had earned fee because of compromise, since unexplained, such recital indicates either judgment rendered despite compromise or one satisfied after rendition.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

6. Taxation ⬦647—Tax judgment should not leave it uncertain whether suit was brought in rem or quasi in rem (Rev. St. 1911, art. 7688, 7698).

Recitals of tax judgment should not leave it uncertain whether tax suit was brought strictly in rem under Rev. St. 1911, art. 7698, or quasi in rem under authority and requirements in article 7688.

7. Taxation ⬦647—Recitals in tax judgment susceptible of interpretation that district judge jointly fixed liability on separate tracts with separate assessments imports irregularity.

Language in tax judgment susceptible of interpretation meaning that district judge realized three separate tracts of land with separate assessments were involved, and with that fact in mind liability for all of taxes was jointly fixed on all tracts, imports question of irregularity.

8. Taxation ⬦810(1)—Purchaser at tax sale must introduce judgment and writ and cannot claim as innocent purchaser.

Purchaser claiming under judgment in tax suit must introduce judgment and writ, and may not claim status of an innocent purchaser.

9. Trusts ⬦95—Assistant county attorney purchasing land at tax sale in official relation will be regarded as mere trustee or beneficiary of misconduct (Rev. St. 1911, arts. 347, 7689).

If official relation, under Rev. St. 1911, arts. 347 and 7689, of assistant county attorney purchasing land at tax sale is made to appear and ordinary effect is not precluded by evidence of justification, he will be regarded as having become a mere trustee or beneficiary of misconduct, in that duty was on assistant county attorney in absence of county attorney to have bid for the state so as to protect owner.

10. Judgment ⬦853(3)—Preparation and delivery to sheriff, with instruction to hold and return on last day, held not "issuance of execution," preventing judgment from becoming dormant (Rev. St. 1911, art. 3717).

Timely preparation and delivery of writ, with indorsement thereon instructing sheriff to hold until last day for return, and return, held not "issuance of execution," within Rev. St. 1911, art. 3717, which would prevent judgment from becoming dormant, or support alias writ without revivor.

11. Judgment ⬦273(8)—Recital that cause came on to be heard and that plaintiff recover judgment by default disclosed judicial action inappropriate in proceeding for judgment nunc pro tunc.

Recital that cause came on to be heard and it was ordered adjudged and decreed that plaintiff do have and recover judgment by default with writ of inquiry held to disclose judicial action wholly inappropriate in entry of judgment nunc pro tunc, in that it purports rendition of judgment and not entry of judgment formerly rendered.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Carl Wallace and others against Charles M. Orr and Edward T. Harrison, wherein defendant last named filed a cross-action against defendant first named consolidated with a suit by Charles M. Orr against the State of Texas and another. Judgment for plaintiffs was reversed and remanded by the Court of Civil Appeals (285 S. W. 650), and defendant last named brings error. Affirmed.

J. L. Goggans, of Breckenridge, B. O. Baker, of Dallas, for plaintiff in error.

O. F. Wencker, of Dallas, for Carl Wallace and others.

John W. Pope and Stennis & Stennis, all of Dallas, for defendant in error.

NICKELS, J. In the opinion of the honorable Court of Civil Appeals (285 S. W. 650) there is a general (although in some respects an incorrect) statement of the case and its various branches. It will not be restated here, except to the extent necessary to illustrate the points under discussion.

In the trial court peremptory instructions were given against Orr. This was assigned for error in the Court of Civil Appeals and the assignment was there sustained. The reasons given by that court, we think, too narrowly restrict Orr's privileges on the new trial.

The Court of Civil Appeals correctly held that an issue of fact was made about falsity of the tax-judgment recital of service upon him; but it held that the "undisputed evidence" shows a perfected bar of limitations in Harrison's favor under the four-year statute (article 5529, R. S. 1925), and hence that everything averred against the judgment by way of direct attack is precluded. The evidence upon which the ruling is predicated is in no wise disclosed in the opinion, and upon the assumption that the conclusion was right, writ of error was allowed upon assignments presenting the bar as against those things alleged by way of collateral attack upon the judgment and by way of direct and collateral attack upon the order of sale, sale, and sheriff's deed. Harrison's petition in error brought up the case as to all parties in order, it recites, that the Supreme Court "may unquestionably have the power and right to render whatever judgment it thinks proper herein as regards the rights of this plaintiff in error," etc., and includes a prayer for rendition of "such judgment as the law demands to the end that justice may be done."

Examination of the record has impelled the conclusion that the Court of Civil Appeals erred in its view of the evidence touching the matter of limitations. As remarked, its opinion does not exhibit the testimony, but upon examination it is found to consist, in the main, of testimony given by Orr upon the trial in his own behalf and upon cross-examination

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in which he was confronted with purported transcripts of former contradictory statements and of statements attributed to him in a deposition previously taken by Harrison, et al., and introduced by them subsequent to Orr's appearance as a witness.

[1, 2] The barring period did not commence until Orr learned, or in user of due care ought to have learned, of the existence of the judgment. Levy v. Roper, 113 Tex. 356, 256 S. W. 251. The evidence bearing upon actual knowledge and due care is identical. Hence, in any view of the record Orr's attacks are not barred unless he acquired requisite knowledge prior to December 21, 1911, because on December 21, 1915, his suit by way of direct attack was brought. Manifestly, the burden of proving that essential fact was upon Harrison unless through evidence produced in his own behalf Orr proved it for him. McAllen v. Alonzo, 46 Tex. Civ. App. 449, 102 S. W. 475. Unless Orr thus served his antagonist, Harrison must have proved the fact by evidence of conclusive effect in order for the peremptory instruction in his favor to be sustained.

[3] There are one or two facts worthy of general notice in the approach to the more directly relevant evidence, and which might well have been considered by the jury if the case had been properly submitted to it. The case was tried in June, 1924; the exact point of inquiry related to a period expiring some 12 years before, and this affords an element to be considered in weighing evidence. At the time of the trial, Orr was about 60 years of age, and there is some manifestation of infirmities in him; he has an impediment of speech, and this might be thought by a trier of fact to resolve seeming contradictions afforded by comparison of transcripts of alleged former statements with statements made upon the trial, or might be taken in corroboration of his denials or restrictions of alleged former statements; in connections other than examination upon the exact point in controversy here, and under circumstances apparently negativing motive or purpose to evade or dissemble, he exhibited defects of memory, such, for example, as inability to state the day, month, or year of his wife's death, the year of their marriage or (except after reflection) her "maiden name." As will be seen, Mr. Goggans is attorney for Harrison and upon the trial heard Orr testify and cross-examined him; Orr's testimony so places Mr. Goggans as that he was bound to have personal knowledge of the approximate date of acquisition of knowledge by Orr; yet Mr. Goggans did not testify, and no effort to procure his testimony is disclosed.

Upon direct examination in his own behalf Orr testified as follows:

"They, have introduced in evidence here copies of records showing default judgment and later what purports to be a final judgment in a tax suit, styled State of Texas v. Chas. M. Orr and numbered 2261 on the docket of the 44th district court. To my knowledge I was never served with any citation in that tax suit. The first that I learned that that property had been foreclosed on was some time after the sale. I was on Elm street, and a doctor I had met there several times told me he had been down to the courthouse, that he had seen my property had been sold for taxes, that was after the sale, and I came to the courthouse and looked it up, I think the next day, but I don't know how long it was that it had been sold. I came down to the courthouse and went all through and finally landed in the tax assessor's office and met Mr. Goggans, this gentleman over here. He was an attorney I think for the commissioners' court, bringing suit for taxes. I talked to him about this sale. He told me it had been sold, and I believe he told me I could redeem it at the end of two years from the sale. After I learned the property had been sold, I believe I went up and talked it over with Mr. Kinbrough. He had been my attorney in matters before that, and I think I went to Mr. Bolanz and talked to him and Mr. Murphy about it.

"I received no notice from the sheriff that this property was being advertised for sale before this doctor told me it had been sold. After talking with Mr. Kinbrough and Mr. Bolanz, Mr. Bolanz and Mr. Murphy both suggested it could be redeemed and I could wait until the time was up to redeem it and then redeem it. About thirty days before the time expired I went to Mr. Bolanz and asked him to attend to it for me. I understood I had two years in which to redeem it, and it was about thirty days or more before that time expired that I made this arrangement with Mr. Bolanz. I made arrangements to pay it off for me or have it done. They had a real estate office, and I didn't want to meet Mr. Harrison and referred Mr. Bolanz to the matter and asked him to attend to it for me. They told me they would get in touch with Mr. Harrison and attend to it."

On cross-examination by Mr. Goggans, Harrison's attorney, he said (in part):

"I testified before, and also in my deposition, that I met a Doctor Bell in a saloon in East Dallas a short time after the sale was made, and he told me about the sale having been made; then thereafter I came to the courthouse and investigated the matter.

"I told you before that I couldn't tell how long it was after the sale had been made. I said in my deposition possibly it was less than two months. I am inclined to believe it was, but it could have been six months. I am inclined to believe it was less than six months.

"I think I came down to the courthouse and found a notice of the sale on the board. I am not sure about that. I think I pulled the notice off of the door, or the notice could have been there for years as far as that is concerned.

"I think possibly I testified in the trial four or five months ago that it might have been less than week, that it was right after the sale that I was down here."

Further, in the cross-examination, he was confronted with transcripts of alleged former statements (made in previous trials of the

case and in depositions taken in the case), some of which, if correctly reproduced, and if separately considered, would show that he acquired the information (above shown) at some date shortly after (maybe, before) the sale. Some of the supposed statements he repudiated, and others he qualified or explained. Throughout the cross-examination, however, he stoutly maintained that he did not acquire the information until some undisclosed date after the sale.

It appears that at some previous date Orr's deposition had been taken by Harrison, and this was introduced by Harrison after Orr had testified at the trial upon direct and cross examination. In view of his presence and testimony at the trial, Harrison did not have the absolute right to introduce the deposition (see Schmick v. Noel, 64 Tex. 406; McClure v. Sheeks' Heirs, 68 Tex. 426, 4 S. W. 552; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Ry. Co. v. Burnett [Tex. Civ. App.] 42 S. W. 314; Fire Ass'n v. Masterson [Tex. Civ. App.] 83 S. W. 49), unless, perchance, for impeachment or by way of proving declarations against interest. But since he did introduce it, it must be regarded as his own evidence and not as chargeable to Orr in an obligatory sense. Orr had the liberty of testifying upon the trial to things explanatory, contradictory, or repudiative of his former statements and testimony. We do not regard the matter shown in the deposition as inevitably fixing the date of acquisition of knowledge prior to December 21, 1911; but if the date was thereby so fixed, that evidence, for reasons stated, would not have been conclusive against him.

The sum of the testimony upon the point discloses with any degree of certainty but five things: (a) Acquisition of knowledge that the property had in some way been sold for taxes; (b) that acquisition of knowledge at some undisclosed date intervening March 1, 1910 (date of sale), and March 1, 1912 (date of two years' redemption period); (c) an estimative character for all references to the probable date; (d) contradictions in those estimates; and, (e) a memory uncertain in fact or by purpose. To hold that he did acquire the requisite knowledge prior to December 21, 1911, is but to indulge an inference of fact, which is included in the jury function. The effect to be given to existence of contradictions and prior declarations involves weighing of testimony with necessary crediting or discrediting the witness. Stevenson v. Barrow (Tex. Com. App.) 291 S. W. 1101. A contrary ruling would take from Harrison the burden of proof, which is his, and put it upon Orr, where it does not belong.

The judgment of reversal and remander of the cause as between Harrison and Orr is therefore correct without regard for the reasons assigned by the Court of Civil Appeals.

Many questions are suggested in the record and in the briefs and arguments here and in the Court of Civil Appeals. Except for the existence of a fact issue in respect to limitations, which opens for reconsideration in the trial court most of the questions given disposition by the Court of Civil Appeals, it would be necessary, in view of a new trial, to give all of them consideration here. Under the circumstances, however, there are some matters which must be noticed.

A character of regularity for the tax judgment, order of sale, sale, and sheriff's deed is pronounced by the Court of Civil Appeals. In this there is error to which we merely direct attention in a precautionary way.

[4, 5] Personal liability against Orr was not adjudicated in the tax judgment; yet the order of sale in referring to the judgment recites a judgment of that kind, whereas in article 3783, R. S. 1925 (article 3729, R. S. 1911), it is required that the judgment be "correctly described." In the same article it is required that items of cost be correctly indorsed on the execution (order of sale); in this case the paper contains indorsements (therefore declarations) to the effect that the district clerk had earned a fee of $1 because "suit compromised," and the county clerk had earned a fee of $2 because "first tract compromised during pendency of suit." Unexplained, a recital of "suit compromised" indicates either a judgment rendered despite the "compromise" (in turn, probability of fraud or mistake in procurement) or one satisfied after rendition (in turn, lack of authority for issuance or execution of a writ). Terry v. O'Neal, 71 Tex. 592, 9 S. W. 673; Willis v. Hudson, 72 Tex. 598, 607, 10 S. W. 713; Freeman on Executions (2d Ed.) § 19; 10 R. C. L. p. 1238. The sheriff's deed seems to include a recital of a judgment rendered in "1999"—an anomaly which may or may not be cured by other recitals which are not in the present record.

[6, 7] Recitals of the judgment leave it uncertain whether the tax suit was brought strictly in rem under the authority of article 7698, R. S. 1911, or quasi in rem per authority and requirements in article, 7688, R. S. 1911. If a situation shall arise in which the doctrine of collateral attack must be considered, there will be a relevant inquiry about classification of the case as explained by Judge Denman in Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329; and if upon that inquiry it be found that the case belongs in the second category described by Judge Denman (and since the judgment roll, save for the judgment entry, is lost), secondary proof in exemplification (but not in contradiction) of the judgment roll must be examined to ascertain the meaning of the judgment and to ascertain whether it be in fact a judgment as distinguishable from brutem fulmen. If the case belong in the first classification described by Judge Denman and in any way it be made to appear

that assessments sufficient to create a tax lien (Clegg v. State, 42 Tex. 605) were not made, or if those facts be developed in exemplification of the judgment roll in the event the case belongs in the second category, lack of jurisdiction will appear which, in turn, will present a nullity to be noticed "by any court, and at any time." Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 53 Am. St. Rep. 770; State v. Trilling (Tex. Civ. App.) 62 S. W. 788. In view of the lack of adjudication of personal liability against Charles M. Orr, proof to be introduced and considered within the limitations described may develop a question about the judgment as to whether it is final or interlocutory in view of the issues required to be injected in a tax suit brought under article 7688, R. S. 1911. Linn v. Arambould, 55 Tex. 611. If the latter question arises, the case is to be distinguished from that of League v. State (Tex. Civ. App.) 56 S. W. 263, s. c. 93 Tex. 553, 57 S. W. 35, s. c. 184 U. S. 156, 22 S. Ct. 475, 46 L. Ed. 478, wherein lands previously sold to the state were involved, and which fact, under the circumstances there, prevented existence of personal liability. And, too, there is in the judgment language susceptible of an interpretation which would mean that the district judge realized that three separate tracts of land, with separate assessments, were involved and that with that fact in mind liability for all of the taxes, etc., was jointly fixed upon all of the tracts; this imports the question of irregularity, etc., considered in Richey v. Moor, 112 Tex. 493, 249 S. W. 172.

[8] Harrison, of course, must introduce the judgment and writ. Bailey v. Block, 104 Tex. 101, 134 S. W. 323; Brown v. Bonougli. 111 Tex. 275, 280, 232 S. W. 490. Hence, he will be compelled to inject the questions arising upon or having source in the face of his title papers; in respect to those things, he may not claim the status of an innocent purchaser (Ayres v. Duprey, 27 Tex. 593, 86 Am. Dec. 657; Boggess v. Howard, 40 Tex. 153), or invoke the doctrine of collateral attack (Freeman on Judgments [5th Ed.] p. 788).

[9] The record suggests that Harrison may have been an assistant county attorney when he purchased at the sale. If so, he had certain official duties at the time and touching the sale, at least in absence of the county attorney. It has never been the policy of the state finally to acquire lands at tax sales for its own benefit (League v. State [Tex. Civ. App.] 56 S. W. 262); yet in order to secure protection, etc., it has required its officers to be present and bid for it upon conditions,—at the time in question, that duty was upon the county attorney (article 7689, R. S. 1911) and his assistants (article 347, R. S. 1911). In harmony with the policies indicated, the state has always kept open, by successive extensions of the period, the right of redemption, so that if this land had been bought for the state Orr would still have that right. If there were no other bidders, and the county attorney was absent, it was the duty of Harrison (if he were an assistant) to bid for the state, and if he had done so Orr would still be protected; and even if there were other bidders, there existed, in our opinion, an incompatibility between his official duties and his personal desires which removes all ground for approval given an attorney's purchase in Douglass v. Blount, 95 Tex. 377, 67 S. W. 487, 58 L. R. A. 699, and presents an instance within the condemnation of such cases as Jones v. Martin, 26 Tex. 57, McLaury v. Miller, 64 Tex. 384 (as those cases are limited in Douglass v. Blount, supra), and Schroeder v. Young, 161 U. S. 340, 16 S. Ct. 514, 40 L. Ed. 725. See, also, Felts v. Bell County, 103 Tex. 616, 132 S. W. 123; Smith v. Perkins, 81 Tex. 152, 16 S. W. 805, 26 Am. St. Rep. 794; and Satterthwaite v. Loomis, 81 Tex. 64, 16 S. W. 616. If his official relation is made to appear, and the ordinary effect is not precluded by evidence of justification, he must be regarded as having become a mere trustee or the beneficiary of misconduct, and the equities, not determined by other matters, must be adjusted upon that basis. This matter, of course, is not affected by the doctrine of collateral attack, for it arises in harmony with and presupposes a sufficient judgment and sale.

The claims of Wallace, Walker, and Utay, in respect to lot 15, rest in part upon a conveyance from Harrison pendente lite, and their claims, as thus rested, are subject to what has been said touching the rights of Harrison.

[10] The other source of these claims is a judgment supposed to have been rendered March 18, 1913, in a case in which Wallace was plaintiff and Orr was defendant; Wallace purchased August 4, 1914, at sale under execution issued July 6, 1914. This execution purports an alias character, and in it a previous execution is mentioned as having been issued May 27, 1913, and returned nulla bona. If the supposed former execution was not "issued" within the meaning of that term as used in article 3717, R. S. 1911 (article 6773, R. S. 1925), the supposed judgment of March 18, 1913, was dormant when the execution under which Wallace bought was issued. There is evidence in the present record which, unrebutted, indicates that upon clerical preparation of the writ of May 27, 1913, an indorsement was put upon it instructing the sheriff to "hold until August 25, then return it." Apparently, the sheriff obeyed this instruction and made a mere formal return on August 25, 1913, which was the last day for a return. If it turns out that such was the nature of this transaction, it must be held, in our opinion, that it did not amount to an "issuance" of an execution as provided for in the statute named. This exact point is

not authoritatively covered in any Texas case with which we are familiar; Schneider v. Dorsey, 96 Tex. 544, 74 S. W. 527, and Bourn v. Robinson, 49 Tex. Civ. App. 157, 107 S. W. 873, 875, go part of the way. And in the latter case the rule is announced that "issuance" means something more than mere clerical preparation and includes unconditional delivery to an officer for enforcement in the manner provided by law. This appears to us to be a just rule, since, as Bacon remarked, execution process is the life of the law, and since forms of law are not generally to be used in mockery of its spirit. The rule, it may be noted, appears to have the sanction of courts of most other jurisdictions. Howes v. Cameron (C. C.) 23 F. 324; In re Tengwall (C. C. A.) 201 F. 82; Pease v. Ritchie, 132 Ill. 638, 24 N. E. 433, 8 L. R. A. 566; Cook v. Wood, 16 N. J. Law, 254; 10 R. C. L. p. 1241; Freeman on Executions, § 9a; 17 Cyc. 1033. A like rule as to issuance of citation, etc., has been generally applied in determining when an action has been commenced in jurisdictions in which that date is governed by issuance of process (1 Cyc. 747, 748; 25 Cyc. 1293), and the adverse effect of delaying execution of process, once clerically issued, has illustration in cases involving the commencement date of limitations—amongst others see Ricker, Lee & Co. v. Shoemaker, 81 Tex. 22, 16 S. W. 645; Bates v. Smith, 80 Tex. 242, 16 S. W. 47; Bering Mfg. Co. v. Carter (Tex. Com. App.) 272 S. W. 1105.

[11] We have spoken of the judgment under which Wallace purchased as "supposedly" rendered March 18, 1913; and what was said about the question of dormancy proceeded upon the assumption of its rendition at that time. But, in truth, it is impossible to determine from the purported judgment entries in the present record when it was rendered. Its entry is accompanied by another which discloses an attempted exercise of jurisdiction of the case itself as late as September 4, 1922, for on that day, it is said, "came on to be heard the above entitled and numbered cause. * * * It is therefore ordered, adjudged, and decreed by the court that the plaintiff Carl Wallace do have and recover a judgment by default with a writ of inquiry against Charles M. Orr," etc. If that recital is correctly copied, the judicial action evidenced by it was wholly inappropriate in a proceeding for entry of a judgment nunc pro tunc, as is sufficiently explained by reference to Colman v. Zapp, 105 Tex. 491, 151 S. W. 1040. It purports the rendition of a judgment on that late day, and not the ordering of entry of judgment formerly rendered. If the relevant presumptions be indulged in favor of the jurisdiction of the court, this recital (as now before us) means either that no judgment was formerly rendered at all, or, for some reason known to the court but undisclosed here, the former rendition was void; and the result is that no judgment existed to support the executions in 1913 and 1914. These anomalies may disappear upon the new trial, or, as is manifest, their explanation may develop another—i. e., the lack of entry of final judgment prior to issuance of the executions.

We have thus referred to the judgment and execution which form one chain of Wallace's title (and the title of his associates) by way of precaution against error in the new trial which is invited by the pronouncement of regularity for these proceedings in the opinion of the Court of Civil Appeals. Because of these things, and because of the homestead issue described by the Court of Civil Appeals, the reversal and remand as against Wallace, Walker, and Utay was proper.

Accordingly, we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.