**R. B. SPENCER & CO. et al. v. HARRIS et al.**

**No. 5543.**

Court of Civil Appeals of Texas. Amarillo.

April 26, 1943.

Rehearing Denied May 24, 1943.

S. J. T. Smith, of Waco, for appellants.

W. T. Williams, of Austin, for appellees.

FOLLEY, Justice.

This suit was filed by the appellees, Amanda Harris and her husband, M. I. Harris, against the appellants, R. B. Spencer & Company, a partnership, and the individual members of such firm, to cancel a purported judgment lien and to remove cloud from title to 56 acres of land of the Freeman Wilkerson Survey in Bastrop County. The appellees alleged that the judgment upon which the lien was predicated was dormant and barred by limitations under Articles 3773 and 5449, Vernon's Ann. Civ.St. Appellants filed a cross action seeking foreclosure of the judgment lien upon the land and order of sale. The trial, which was before the court without a jury, resulted in a judgment for appellees, canceling the purported judgment lien and removing the cloud from the title and denying appellants any relief on their cross action.

It appears that on March 8, 1932, appellants recovered a judgment in cause No. 16,860 in the 54th District Court of McLennan County against appellees and Charles E. Harris for the sum of $2,170.74 and costs, for foreclosure of a mechanic's and materialman's lien upon Lots 3 and 4 in Block 87 of the town of Hamlin in Jones County, and for order of sale. The judgment provided for ten per cent interest from its date.

On March 29, 1932, an order of sale was duly issued out of said cause directed to the sheriff of Jones County, ordering him to seize and sell the lots mentioned, which was duly executed and the property sold on May 3, 1932, for $500 and the judgment was credited with $446.10, the remainder being applied to costs. Theretofore, on March 12, 1932, an abstract of judgment was issued by the clerk of such court and recorded in various counties. It was recorded on November 24, 1939, in Bastrop County but it falied to show the correct balance due as of such date in that the credit of $446.10 and $18.30 court costs were not shown to have been paid.

On February 12, 1942, the attorney for the lumber company addressed a letter to the clerk of the 54th District Court at Waco, asking that an alias execution be issued in such cause and to have the same returned "nulla bona." On February 13, 1942, such clerk prepared an alias execution addressed to the sheriff or any constable of the State of Texas and delivered it to the sheriff of McLennan County. On that same day such officer made the following return thereon: "Came to hand on the 13th day of Feb. 1942 and returned on the 13th day of Feb. 1942 not executed. No property of M. I. Harris, A. E. Harris and Charles E. Harris, jointly and severally, defendants found in McLennan County subject to execution." The officer who executed the writ testified that he was instructed to return the execution "nulla bona." He did not state, nor does the record show, who gave him such instructions but he said that the clerk gave him the execution. He testified further that before making his return he checked the McLennan County tax records and found nothing of appellees upon the tax

renditions. In response to the further question as to why he made such a return, he stated: "I returned the execution to the District Clerk's office on February 13, 1942. I returned it on the same day I received it because I had checked the execution, found nothing subject to execution in this County, which justified such return."

After this return was made on February 13, 1942, and on the same day, the clerk issued another abstract of such judgment showing the amount of the judgment, the further sum of $1.25 as court costs, and the credit of $446.10 paid on the judgment on May 3, 1932. Such abstract of judgment was duly filed, indexed, and recorded by the county clerk of Bastrop County on February 23, 1942.

It was agreed in the instant suit that the appellees are the owners of the 56 acres of land in controversy, that they became such owners on August 7, 1937, and that the only issue in this case is whether appellants had a lien upon the land. It was further stipulated that appellees had never resided in McLennan County. Appellees alleged in their petition in the present suit that they resided in Travis County. The testimony shows that at the time of the first suit they resided in Jones County. Prior to the alias execution issued on February 13, 1942, one of the Spencers, who had charge of the past due notes and paper, made a search of the records of McLennan County and learned that appellees had no property therein. Appellants' counsel knew about the search and its results.

Appellees filed this suit on April 3, 1942. They attacked the abstract of judgment filed in Bastrop County on November 24, 1939, on the theory that it fixed no lien because it did not comply with the provisions of Article 5447, Vernon's Ann.Civ.St., which requires that the abstract of judgment, to be effective, must show, among other things, the "amount for which the judgment was rendered and balance due thereon." Appellees claimed that the failure to show the proper credits on the judgment, as above noted, voided the lien sought to be fixed thereby. They attacked the lien sought to be fixed by the second abstract of judgment of the date of February 13, 1942, on the theory that the purported issuance of the alias execution on February 13, 1942, was invalid and that by reason thereof the judgment became barred by limitations on March 29, 1942, which was ten years after

the issuance of the first execution in the form of an order of sale. Article 5449, Vernon's Ann.Civ.St. The gravamen of this latter complaint is that the request from appellants' attorney that the alias execution should be returned "nulla bona", and the fact that it was, in effect so returned, voided the process because the same did not constitute an issuance within the meaning of Article 3773 and therefore was not sufficient to keep the judgment alive. The trial court apparently adopted all of the above-stated theories of the appellees. The appellees make the same contentions in this Court.

As we view this case, it becomes immaterial whether the first abstract of judgment filed in Bastrop County November 24, 1939, fixed a lien upon the land in favor of appellants. The second abstract of judgment was issued February 13, 1942, and was duly recorded in Bastrop County within a few days after the date of the alias execution of February 13, 1942. No complaint is made about the form of the second abstract of judgment. In fact, the stipulation of the attorneys herein relative to it removes any question in regard to its validity. Appellees merely assert that it fixed no lien, not because of any defect in such instrument itself, but because of the alleged dormancy of the judgment upon which it was based. Therefore, the only question which remains to be decided is whether there was a valid issuance of an alias execution on February 13, 1942, which was less than ten years after the first execution and which would have kept the judgment alive ten years after the issuance of the alias execution; and the lien, if any, fixed by the recording of the second abstract of judgment would have continued for ten years after it became fixed or so long as the judgment was not dormant. Articles 3773 and 5449.

In defense of the trial court's action in sustaining their theory, appellees rely chiefly upon the cases of Harrison v. Orr, Tex. Com.App., 296 S.W. 871, and Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531. In the Orr case a notation was placed upon the execution instructing the sheriff to "hold until August 25, then return it." [296 S.W. 875.] The sheriff apparently obeyed this instruction, making only a formal return on August 25, 1913, which was the last day for a return. It was held in that case that there was no "issuance"

of the execution within the meaning of the law. In the Ramp case the testimony was that the execution was handed to the sheriff with directions that he should not levy on mortgaged property of one of the judgment debtors because to do so would probably cause him to lose everything he had and not result in satisfying the judgment, and that the sheriff should return the execution "nulla bona" if he had no knowledge of any property subject to it. It was held in that case that such facts did not constitute an "issuance" of the execution as provided in Article 3773, and cited the Orr case.

We think neither of the cited cases is in point with the facts of the instant case. In each of them there was an obvious lack of diligence and good faith upon the part of the judgment creditor. The judgment debtor in each case apparently owned property in the county where the execution was delivered to the officer. The sheriff in each instance was deterred from performing the duties commanded of him in the writ by oral instructions contrary thereto. A fair analysis of each case warrants the inference that but for such instructions the judgment might have been satisfied to some extent out of property subject to the execution. Such is not the case in the instant suit. Appellees owned no property in McLennan County. Therefore, the sheriff made the only return that could have been made had no oral instructions been given him. Moreover, he obviously disregarded such oral instructions or, at least, he satisfied himself as to whether such instructions could be rightfully followed. He checked the tax rolls of the county to see if there was any property subject to the writ. Having found none, he made the "nulla bona" return which, according to his testimony, was made solely because his search "justified such return."

A study of the authorities cited in the Orr case impels the conclusion that such case was decided upon the general principle that "an execution can not be said to be issued until it has been delivered to the officer for service." 10 R.C.L. 1241. In the first case cited therein, Howes v. Cameron, C.C., 23 F. 324, it was held that the handing of an execution to an officer with express directions not to execute it until further instructions, and no further instructions having been given during the lifetime of the writ, was not an issuance of the execution. The three other cases cited are of the same import. In re Tengwall Co., 7 Cir., 201 F. 82; Pease v. Ritchie, 132 Ill. 638, 24 N.E. 433, 8 L.R.A. 566; Cook v. Wood, 16 N.J.L. 254. The Ramp case, which appears to have been decided upon the same principle, cites only the Orr case. In the instant case the writ was delivered to the officer for the only service that was possible and, under the circumstances, we think there was neither want of diligence nor lack of good faith. It was at least "placed where it might have been executed, and some efficient act done under it." First Nat. Bank of Mauch Chunk v. Dwight, 83 Mich. 189, 47 N.W. 111; 33 C.J.S., Executions, p. 208, § 67; 23 C.J. 361, § 114. We therefore conclude that the execution in question was issued within the meaning of Article 3773, that the judgment is not dormant or barred by limitations, and that the appellants fixed a valid judgment lien upon the land in question upon filing the second abstract of judgment, which lien still exists and should be foreclosed. Pfeuffer v. Werner, 27 Tex.Civ.App. 288, 65 S.W. 888, writ denied; Riddle v. Bush, 27 Tex. 675; Graves v. Hall, 13 Tex. 379; McClaflin v. Winfield, Tex.Civ.App., 279 S.W. 877; Freeman on Executions, Vol. 1, Third Edition, p. 25, § 9a; Freeman on Executions, Vol. 2, Third Edition, p. 1030, § 206.

The judgment of the trial court will be reversed, and judgment will be rendered that appellees take nothing by their suit and that appellants, in their cross action, recover of appellees judgment for foreclosure of the judgment lien upon the 56 acres of land and for order of sale.