WALTER L. PEASE

*v.*

WILLIAM C. RITCHIE *et al.*

*Filed at Ottawa May 14, 1890.*

1.  REDEMPTION—*by judgment creditor—whether his judgment must be a lien—discharge in bankruptcy of the debtor.*   A judgment creditor may redeem from a prior execution sale, although his judgment may not be a lien; and the discharge in bankruptcy of the defendant in the execution will not deprive the judgment creditor of the right to redeem under a judgment which is no lien.

2.  The right of redemption given by statute to judgment creditors is not affected by the discharge in bankruptcy of the defendant in the

judgment. The only effect of the discharge is to release the bankrupt personally from the payment of the judgment. It operates to protect after acquired property from being taken in satisfaction of the judgment. In all other respects the judgment remains in full force.

3. SAME—*estoppel of debtor—to claim that the judgment under which the prior sale was had, was satisfied—as affecting the right of judgment creditor to redeem.* Where a judgment debtor has the judgment against himself and others bought up by another for his benefit, and has an execution issued thereon and levied upon his own land, and becomes the purchaser in another's name, and held out to the world that the judgment was in full force against him, and thereby induced another judgment creditor to redeem from the prior sale, he will be estopped, by his acts and representations as to the validity of the judgment against himself, from showing that it was paid, and thereby defeat the sale on the redemption.

4. JUDGMENT LIEN — *"issuing" of an execution—in what it consists.* The mere writing out an execution, and placing it among the files of the clerk's office, is not such an issue thereof as is required to make the judgment a lien on the lands of the debtor. In order to have the effect of continuing in force the lien of the judgment, the execution must within one year be issued, and delivered to the sheriff for collection.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

The pleadings in this case are quite voluminous, consisting of bills, amended bills, supplemental bills, cross-bills, answers and replications; but it will serve no useful purpose to enter upon a detailed statement of the pleadings. It may be enough, perhaps, to state, that under the pleadings and proofs the title to lot 28, block 9, Fort Dearborn addition to Chicago, is involved, and the question to be determined is, whether the title to the property belongs to the complainant, Walter L. Pease, appellant, or to William E. Hale, appellee.

On the 12th day of July, 1872, Walter L. Pease owned the property, and on that day he and his wife executed a mortgage on it to the United States Mortgage Company, to secure the payment of $20,000. That mortgage is not, however, involved here. On the 16th day of December, 1875, Robert B. Chisholm recovered a judgment in the Superior Court of Cook

county, against Walter L. Péase and others, for the sum of $16,625. On the same day an execution was issued upon the judgment, and, under the statute, the judgment became a lien on the real estate of Pease. An *alias* execution was issued on the judgment June 28, 1879. The return on the execution showed a levy on lot 28, block 9, Fort Dearborn addition to Chicago, etc., September 24, 1879, and a sale of the same October 27, 1879, to Stephen L. Inslee, for $10. June 14, 1878, judgment was rendered in the circuit court of Cook county for $1275.01 and costs, in favor of Daniel L. Wells, Henry D. Norton and Frank E. Walker, against Walter L. Pease and others. An execution, dated June 14, 1878, was made out by the clerk upon said judgment, but it was never delivered to the sheriff, and it was indorsed "Not called for."

August 18, 1878, Pease filed his voluntary petition in bankruptcy in the United States District Court for the Northern District of Illinois. In his schedule of assets attached he inventoried lot 9, block 28, Fort Dearborn addition to Chicago, but did not mention lot 28, block 9, in said addition. He did not include in the schedule of assets any interest in the judgment of *Chisholm* v. *Pease, Dobbins et al.* Among his liabilities was scheduled a debt of $16,625 to R. B. Chisholm, upon a judgment rendered December 16, 1875. His indebtedness, as shown by his schedules in bankruptcy, amounted to about $350,000. August 29, 1878, he was adjudicated a bankrupt. Albert T. Lewis was appointed his assignee. October 7, 1878, the register in bankruptcy made to the assignee a deed of assignment of the bankrupt's property, which was recorded November 11, 1878. October 11, 1878, Lewis filed in the bankruptcy court his petition for leave to sell certain assets of the bankrupt, describing them. Among the assets was mentioned lot 9, block 28, Fort Dearborn addition to Chicago. October 11, 1878, the District Court ordered the assignee to sell the property mentioned in the petition, at public auction.

On November 9, 1878, the assignee's report of sale was filed, showing that on November 2, 1878, the assignee sold the bankrupt's certain right or equity in and to lot 9, of block 28, Fort Dearborn addition to Chicago, Cook county, Illinois, to Stephen L. Inslee, for five dollars. November 9, 1878, the sale was approved by the court, and on the same day the assignee conveyed to Inslee the property. On the 30th day of October, 1880, an execution was issued on the judgment in favor of Wells, Norton and Walker, and on the same day the sheriff levied on lot 28, block 9, Fort Dearborn addition to Chicago. Wells, Norton and Walker then paid to the sheriff $10.80, the amount required to redeem from the sale to Inslee on the Chisholm judgment. The sheriff then advertised the premises for sale, in the mode required by the statute, and at the sale Wells, Norton and Walker bid the amount of the redemption money, and there being no other bid, the lot was struck off to them, and the sheriff executed a deed, as required by the statute. On November 30, 1880, Wells, Norton and Walker conveyed the lot to William C. Ritchie, and on January 14, 1881, Ritchie conveyed to Frances S. Wheeler.

It also appears, that on the 22d day of January, 1879, Pease obtained his discharge in bankruptcy. Subsequently, and on March 16, 1883, Inslee conveyed lot 28, block 9, to Pease. It also appears, that on the 23d of December, 1887, Pease obtained a re-conveyance of the premises from Robert E. Jenkins, assignee.

Messrs. Cook & Upton, and Messrs. Gregory, Booth & Harlan, for the appellant:

There was no execution "issued" upon the Wells, Norton and Walker judgment, within the meaning of the law, and hence the judgment ceased to be a lien. Rev. Stat. chap. 77, sec. 1; *Kelly* v. *Vincent,* 8 Ohio St. 415; *Barton* v. *Delaplain,* 25 Mo. App. 376; *Howes* v. *Cameron,* 28 Fed. Rep. 324; *Gilmore* v. *Davis,* 84 Ill. 487; *Schroeder* v. *Insurance Co.* 104 id. 71.

41—132 Ill.

The judgment being no lien, its obligation was discharged by the decree in bankruptcy, the same as if it was a promissory note. The judgment being satisfied, was not available for the purpose of a redemption. *Bennitt* v. *Mining Co.* 119 Ill. 9; *Widner* v. *Yeast*, 32 Kan. 400; *Murphy* v. *Smith*, 22 La. Ann. 41; *Brandies* v. *Cochrane*, 112 U. S. 349; *Boynton* v. *Ball*, 121 id. 457; *Dimock* v. *Copper Co.* 117 id. 559; *Palmer* v. *Hussy*, 119 id. 96; *Lackey* v. *Steere*, 121 Ill. 598.

There is one other aspect in which this redemption ought to be treated as a nullity. A sale on a satisfied judgment, though not so appearing of record, confers no title, even to a *bona fide* purchaser. Rorer on Judicial Sales, sec. 892; *Kelling* v. *Heard*, 3 Head, 532; *Swain* v. *Saddlemire*, 8 Wend. 676; *Jackson* v. *Anderson*, 4 id. 474; *Levell* v. *Rowley*, 17 Ind. 36; *State* v. *Salyers*, 19 id. 437; *McClure* v. *Logan*, 59 Mo. 234; Freeman on Judgments, sec. 480.

The estoppel should not be allowed against Pease, because Ritchie did not act in good faith. '(*Royce* v. *Watrous*, 73 N. Y. 597; *Hefner* v. *Vandolah*, 57 Ill. 520; *Bank* v. *Ricker*, 71 id. 439.) And again, also, because a party making a representation is only estopped from denying the truth of that which he represented against those in such a position that they had a right to rely on it. 2 Herman on Estoppel, sec. 793; *Tillotson* v. *Mitchell*, 111 Ill. 518; *Hill* v. *Blackwelder*, 113 id. 283; Bigelow on Estoppel, 617-619.

Mr. FREDERIC ULLMANN, and Mr. CHARLES DUPEE, for the appellees:

The conduct of Pease is such as did not entitle him to a favorable consideration in a court of equity, or to any relief in the case.

Appellees Wheeler and Hale have a good title to the premises. Pease, by his representations and conduct, held out to the world that the judgment of Chisholm was still in full force,

and that the sale thereunder was valid. 4 Kent, 281; *Bank* v. *Dennis,* 37 Ill. 385.

It is not the issue, but the delivery, of an execution that creates the lien. Statute entitled "Judgments," secs. 9, 13.

A judgment creditor may redeem whether his judgment is or is not a lien. *Sweezy* v. *Chandler,* 11 Ill. 449; *McRoberts* v. *Conover,* 71 id. 524; *Bank* v. *Dennis,* 37 id. 387; *Moore* v. *Hopkins,* 93 id. 505; *Fitch* v. *Wetherbee,* 110 id. 475; *Burkhart* v. *Reisig,* 24 id. 529.

The right of a judgment creditor to redeem from a prior sale is not taken away by a decree in bankruptcy. *Bruse* v. *Insurance Co.* 96 U. S. 627; *Tallcott* v. *Dudley,* 4 Scam. 435; *Hardin* v. *Osborne,* 94 Ill. 571; *Jenkins* v. *Pierce,* 98 id. 646; *Cole* v. *Duncan,* 58 id. 176; *Bentley* v. *Wells,* 61 id. 60.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Under the facts as they appear from the record, appellant contends, first, that the Chisholm judgment was paid, and as to him a sale thereunder was a nullity, and a redemption thereupon conferred no title whatever on the party seeking to redeem; and second, that the Wells, Norton and Walker judgment against him was not a lien on the premises in controversy, because no execution had issued thereon within a year, under the statute, and that, though a judgment may be used to redeem when not a lien, this judgment could not be so employed, because, at the time redemption was attempted, the appellant had obtained his discharge in bankruptcy, and therefore the judgment could not be made the basis of redemption, any more than it could be sued over or execution issued thereon, and appellant's property sold, if he insisted on the protection of his discharge, and that Wells, Norton and Walker were not therefore judgment creditors, within the meaning of the statute.

Various other questions have been raised and discussed in the argument of counsel, but in the view we take of the record

it will not be necessary to consider them, as, in our opinion, the sheriff's title obtained by Wells, Norton and Walker under the redemption from the sale on the Chisholm judgment, disregarding all other questions, is conclusive of the rights of the parties.

As respects the first proposition,—that the Chisholm judgment was paid,—upon an examination of the evidence it will be found that the judgment was rendered against Pease, Dobbins and others, who were partners. By an arrangement between the partners the equitable obligation to pay the judgment devolved upon Dobbins and the other defendants, and not upon Pease. On the 30th day of January, 1876, Fuller, on behalf of Pease, purchased the judgment, the latter furnishing the money. On the first day of June, 1877, by the direction of Pease, Fuller assigned the judgment to Edward L. Lawrence, and he assigned to Chisholm, the original judgment plaintiff. These assignments were not of record. The transaction was a secret one, known only to Pease, and those connected with him, acting in his interest. In the schedules attached to Pease's bankrupt proceedings, his oath shows that the judgment was still subsisting against him. The attorneys of Pease sued out an execution and caused it to be levied on the premises, and caused the premises to be sold on the execution. At the sale Pease had the property bid off in the name of Inslee. A short time before the execution issued, Pease, in answer to a letter of inquiry by appellee, Ritchie, in regard to the judgment, wrote as follows: "Yours of 25th received. R. B. Chisholm is the owner of the judgment you mentioned, and I understand Mr. Perry represents him in the matter."

Under the facts, we think Pease is now estopped from claiming that the Chisholm judgment was paid. He held the judgment out to the world as a valid, subsisting judgment. He sold the land on an execution issued upon it, and became the purchaser, in another name. After having done these acts, and invited the redemption and subsequent sale by a judgment

creditor, it is too late now for him to assert that the judgment was paid and the sale an idle ceremony. If authority is needed to sustain this position, *Niantic Bank* v. *Dennis,* 37 Ill. 385, is a case in point. The statute conferred the right of redemption upon Wells, Norton and Walker, judgment creditors, and in the exercise of that right they had every reason to believe that the sale under the Chisholm judgment was in all respects valid, and obligatory upon Pease and all other persons claiming any interest in the premises under or through him, and having acted in good faith, they and their grantees ought to be protected.

But it is insisted, that if the sale under the Chisholm judgment is to be treated as valid, it is then claimed that there was no right of redemption in the judgment creditors, Wells Norton and Walker, because their judgment was not a lien, and the discharge in bankruptcy of Pease was a satisfaction of the judgment. The statute provides that a judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, in the county for which the court is held, for seven years from the time it is rendered; but provided, that when execution is not issued on a judgment within one year from the time it becomes a lien, it shall thereafter cease to be a lien. Rev. Stat. chap. 77, sec. 1.

The first question to be considered is, whether, within the meaning of the statute, an execution issued on the judgment in favor of Wells, Norton and Walker within one year from the time it was rendered. As before observed, the clerk made out an execution within the year; but it was never delivered to the sheriff to execute, and when found, an indorsement was found on the back of the execution, "Not called for." We do not think what was done here can be regarded as a compliance with the statute. The statute requires something more than the mere writing of an execution by the clerk and placing it among the files in his office. The word "issued," as used in the statute, has a more comprehensive meaning, and we think

that the fair construction of the word as used in the statute requires an execution to be made out, properly attested by the clerk, and delivered to the sheriff, to be executed by him. The object of issuing an execution is to collect the judgment; but that object can not be carried out unless the execution is placed in the hands of an officer for collection. The only conclusion we are able to reach, when the purpose of the statute is kept in view, is, that an execution can not be said to be issued, within the meaning of the statute, until it is delivered to the sheriff to execute.

From what has been said, it seems plain that the judgment of Wells, Norton and Walker was not a lien from the time it was rendered, and did not become a lien until October 30, 1880, when the execution was issued upon which the redemption was made. But that fact did not prevent them from redeeming. This court has held that a judgment creditor may redeem from a prior sale, although his judgment may not be a lien. (*Sweezy* v. *Chandler*, 11 Ill. 449.) But while appellant concedes that in an ordinary case a judgment creditor may redeem although his judgment may not be a lien, yet it is claimed that appellant's discharge in bankruptcy rendered the judgment unavailing for the purpose of redemption. It is conceded that if the judgment had been a lien, the appellant's discharge in bankruptcy would have had no effect upon it. It is no doubt true that appellant's discharge in bankruptcy operated as a bar to any action which might be brought to recover any debt or obligation existing at the time he was declared a bankrupt, and after-acquired property was exempted from being taken in satisfaction of any such debts. But if any creditor had a lien or an equitable claim, by mortgage or otherwise, upon any property of the bankrupt, such right or rights would remain unaffected by the proceedings in bankruptcy.

In *Tallcott* v. *Dudley*, 4 Scam. 435, the effect of a decree in bankruptcy is somewhat discussed. It is there said: "I take it to be a well settled principle of law, that by a decree of bank-

ruptcy the assignee succeeds immediately to all the rights and interests of the bankrupt, to just the same extent that the bankrupt himself had them, subject to and affected by all the equities, liens and incumbrances existing against them in the hands of the bankrupt. The assignee is not a *bona fide* purchaser for a valuable consideration, but he rather acquires a title by operation of law, and the title comes into his hands in no more perfect a condition than it left the hands of the bankrupt. Indeed, the assignee may be considered rather as a volunteer than a purchaser, and takes the title divested of no lien or equity previously created, either by operation of law or the act of the bankrupt. These are familiar and well established rules under the English bankrupt law, and have been repeatedly recognized and adopted under the bankrupt law of the United States."

When appellant was adjudged a bankrupt the Chisholm judgment was in full force, and a lien on all real estate owned in Cook county by appellant. The assignee succeeded to the title to the lot in question, subject, however, to the right of Chisholm to sell the property in satisfaction of the judgment, and, in the event that the assignee failed to redeem within one year, also subject to the right of Wells, Norton and Walker, judgment creditors, to redeem. Those rights of redemption conferred upon judgment creditors by the public laws of the State may be regarded as valuable property rights, which have not been taken away or destroyed by the proceedings in bankruptcy. In many cases they may be as valuable as a mortgage. In *Hardin* v. *Osborne,* 94 Ill. 571, it was held that "an assignee in bankruptcy does not take the title to the property of the bankrupt as an innocent purchaser without notice, free from latent equities, but he takes as a mere volunteer, standing in the shoes of the bankrupt as respects the title, having no greater rights in this regard than the bankrupt himself could assert." The same rule is declared in *Jenkins* v. *Pierce,* 98 Ill. 648, and *Yeatman* v. *Savings Institution,* 95 U. S. 766. Here

the right of redemption in favor of judgment creditors was not affected by the proceedings in bankruptcy. The judgment in favor of Wells, Norton and Walker was not paid, discharged or released. It remained in full force and effect. The discharge in bankruptcy released the bankrupt personally from its payment, and operated to protect his after-acquired property from being taken in satisfaction of the judgment; but in other respects it remained in full force, and Wells, Norton and Walker had the right to resort to all means conferred by law to enforce its collection, and among these was the right of redemption as judgment creditors.

The decree of the circuit court will be affirmed.

*Decree affirmed.*