(No. 19863.—

SAMON SVALINA *et al.* Appellants, *vs.* ANDRIJA SARAVANA *et al.* Appellees.

*Opinion filed October 25, 1930.*

JAY J. MCCARTHY, and JOHN B. FRUCHTL, for appellants.

SISSMAN & SISSMAN, (PETER SISSMAN, of counsel,) for appellee William H. Snow.

SMIETANKA, POULTON & BRYANT, and WILLIAM T. DICKERMAN, (JOHN J. POULTON, of counsel,) for other appellees.

238

Mr. COMMISSIONER PARTLOW reported this opinion:

On October 5, 1924, appellant Samon Svalina filed his bill for partition in the circuit court of Cook county against Andrija Saravana, Lucija Saravana, Anna Yelich, William H. Snow, and others. Answers and a cross-bill were filed, the case was consolidated with another suit for partition filed by Saravana, and the cause was referred to a master to take the evidence and report his conclusions. The master took considerable evidence, none of which has been certified to this court. He found that Svalina was not entitled to partition under his original bill, that the one-half interest claimed by him belonged to Anna Yelich, as charged in her cross-bill, and various equities between the parties were determined. Objections to the report were made by Svalina and Snow and they were overruled. They were renewed as exceptions before the chancellor, were again overruled, and a decree was entered substantially as recommended by the master. Samon Svalina and Gela Svalina, his wife, have appealed to this court, and Snow has assigned cross-errors and has filed a separate brief.

Appellants in their brief state that the findings of fact as made by the master and recited in the decree are conceded, and that the only issue upon this appeal is that both the master and the court by the decree erred in their conclusions of law as applied to the facts.

The original bill of Svalina alleged that he was the owner in fee simple of one-half of the real estate in question, which was conveyed to him by Mate Yelich on August 18, 1924; that Saravana was the owner of the other half, both interests being subject to a mortgage made by Saravana and Yelich on January 23, 1922, to the Crown Building and Loan Association for $5000; that a contract was executed on May 29, 1923, between Yelich and Saravana, in which Yelich agreed to sell to Saravana his one-half interest in the premises for $4307.15; that Anna Yelich

claimed an inchoate right of dower in one-half of the premises as the wife of Yelich on account of her failure to sign the deed to Svalina; that Snow filed in the recorder's office of Cook county an affidavit in which he claimed that he had a judgment of $5000 against Yelich which was a lien on the property. Anna Yelich in her answer alleged that she was the wife of Mate Yelich and did not join in the conveyance by him to Svalina; that at the date of this conveyance she had a bill for divorce pending against Yelich; that a judgment was afterwards rendered in her favor for $972 against Yelich after the divorce was granted, and that the conveyance from Yelich to Svalina was made for the purpose of defrauding her of her rights in the property. The answer of Saravana set out several judgments held by him against Yelich. It set up the contract of sale between him and Yelich and alleged that Saravana paid $1025 as earnest money on the contract; that Saravana was ready, able and willing to perform the contract but that Yelich refused to perform; that Yelich, with intent to cheat and defraud Saravana, made the pretended conveyance to Svalina for a pretended consideration; that Svalina received the title with notice and knowledge of the rights of Saravana and with the intention to aid Yelich in cheating and defrauding Saravana; that Svalina held the title in trust for Yelich, subject to the rights of Saravana and the creditors of Yelich, and that Yelich, after making said contract, delivered to Saravana possession of the premises.

On February 3, 1925, while the Svalina bill was pending, the Crown Building and Loan Association filed its bill to foreclose its mortgage. The makers of the mortgage and their wives, Svalina and all judgment creditors, were made parties to the bill. On January 4, 1926, the premises were sold under a decree for $7800 to a stranger to the suit. On January 22, 1926, Svalina redeemed from the mortgage sale. The sale left a surplus of $882.99, which was insufficient to pay the liens of Saravana and the other creditors of Yelich.

After the redemption by Svalina, Saravana on January 26, 1926, filed a bill for partition of the premises, in which he alleged that he was the owner of one-half thereof; that he had a contract with Yelich to buy the other half, which contract was in writing and was recorded; that he paid Yelich $1025 earnest money and was always ready, able and willing to perform his contract but Yelich refused to perform; that on May 9, 1924, Saravana recovered two judgments against Yelich, amounting to $580, on which executions were issued and delivered to the bailiff within one year, which judgments were liens upon the property; that Yelich, with intent to cheat and defraud Saravana and hinder and delay his other creditors, fraudulently made the deed to Svalina for a pretended consideration of $3500; that Anna Yelich did not join in the deed; that Svalina participated in the fraudulent transfer and received the title with notice of the rights of Saravana and with an intent to aid Yelich in cheating and defrauding Saravana and other creditors. The bill set out in detail the judgments and claims of the various creditors of Yelich. Yelich was personally served but was defaulted. The other defendants appeared and answered.

The two bills for partition were consolidated, and the order of consolidation specified that all testimony admitted should stand as evidence in each case. The master heard the evidence on the consolidated bills and made a report thereon. After the report was made Anna Yelich was granted leave to file a cross-bill, in which she alleged that Yelich, to defraud her and other creditors, conveyed his interest to Svalina; that the deed was a sham and a fraud and no consideration was paid therefor; that she obtained a judgment in her divorce case against Yelich at the November term, 1925, of the circuit court of Cook county for $972; that execution was issued and placed in the hands of the sheriff and a levy was made upon the premises; that they were sold and that she was the purchaser and a sher-

iff's deed was issued to her on June 29, 1927; that Frank Mastick also obtained a judgment against Yelich on May 15, 1925, in the circuit court of Cook county for $1031.13; that an execution was issued and levied on the interest of Yelich in the premises; that there was a sale and Mastick was the purchaser; that a sheriff's deed was issued to him on June 9, 1927, and he subsequently conveyed his interest to Anna Yelich; that an undivided one-half interest in the premises was in Yelich until the same was sold by the sheriff; that by reason of her sheriff's deed and the deed from Mastick, Anna Yelich was the owner of the undivided one-half interest formerly owned by her husband. The prayer was that the deed from Yelich to Svalina be set aside as a cloud on her title and that the premises be partitioned. Snow filed an answer to the cross-bill, in which he denied that Anna Yelich was entitled to relief under her cross-bill and alleged that she was bound by the former report of the master. Saravana filed an answer admitting the matters set out in the cross-bill. Svalina filed his answer to the cross-bill and asked strict proof as to the judgments of Anna Yelich. He alleged that in the foreclosure suit all of the parties to this suit were defendants in that case, and that it was found by the master and decreed by the court that Svalina had a deed from Yelich to an undivided one-half interest in the premises, and that Anna Yelich was estopped by that finding in the decree from claiming any right under her sheriff's deed.

Evidence was heard by the master upon the cross-bill of Anna Yelich and a supplementary report was made by him. In his original report he found that the property was originally purchased by Yelich and Saravana; that a mortgage was made by them to the building association, as above described; that Yelich conveyed to Svalina; that a bill was filed to foreclose the mortgage and there was a sale and a redemption therefrom, and that Anna Yelich did not join in the conveyance to Svalina and the same was subject to

her inchoate right of dower. The report found that there was a contract of sale between Yelich and Saravana and that $1025 was paid on the purchase price. It set out the various judgments against Yelich in favor of Saravana and Anna Yelich. It found that on May 19, 1922, Snow procured a judgment in the circuit court of Cook county against Yelich for $5000, that no execution was issued on the judgment prior to the transactions in question, and that the judgment was not a prior lien upon the premises. It found that Yelich and Svalina conspired to cheat and defraud Saravana and other creditors and that Svalina held title to the premises in trust for Yelich; that all the parties to this suit were parties to the foreclosure proceeding; that Yelich did not intend to sell his interest in the premises to Svalina and Svalina did not intend to purchase the same; that Svalina loaned Yelich $500 and Yelich gave the deed in question to Svalina as security for the loan; that the remainder of the purchase price of $3500 was never paid; that Svalina, under his deed, held title to an undivided one-half interest in the real estate for Yelich, subject to the dower of Anna Yelich and to all liens of judgment creditors of Yelich; that Saravana was seized of an undivided one-half interest in the real estate, subject to the right of Svalina to be reimbursed for one-half of the redemption money paid by him; that the deed from Yelich to Svalina was executed as security for a loan of $500 and was later made the basis of a scheme to defraud the creditors of Yelich; that Yelich is the owner of an undivided one-half of the real estate and Svalina holds title to that half. It found that Saravana has three judgments, which were second, third and fourth liens on the property; that the judgment of Mastick was a fifth lien; that the judgments of Anna Yelich were sixth liens; that the lien of Svalina for one-half of the amount paid to redeem was a seventh lien, and that his lien for $500 loaned was an eighth lien; that the judgment of Snow for $5000 was not a lien because no execution was issued, and that

Saravana was entitled to partition of the premises as prayed in his bill.

In his supplemental report, which was made after the cross-bill of Anna Yelich was filed, the master referred to his former report and made the findings therein a part of his supplemental report, and he set out his conclusions as to liens as above set forth. He found that the sale by the sheriff to Anna Yelich under her execution and the sale to Mastick under his execution, and the subsequent conveyance of the property by Mastick to Anna Yelich, were valid conveyances, and that Anna Yelich acquired and now holds all the interest of her husband subject to the liens of Saravana.

Various grounds of reversal are urged by Svalina and Snow, who are the only parties complaining about the decree. In determining these contentions it is necessary to consider the findings of the master and the recitals in the decree as true, for the reason that the evidence upon which the findings are based is not before this court.

Appellee Snow insists that the finding of the decree that his judgment was not a lien was erroneous. It is conceded that he obtained a judgment for $5000 against Yelich on May 18, 1922, in the circuit court of Cook county. The clerk issued an execution on June 12, 1922, but it was not placed in the hands of the sheriff. On October 16, 1922, it was returned by the clerk to the files in the case. No execution was issued on this judgment and delivered to the sheriff until October 26, 1926, which was after the transactions in question. Prior to October 26, 1926, the sheriff's sales on the judgments of Anna Yelich and Mastick had taken place and the certificates of sale had been recorded. Snow did not redeem from either of these sales. Section 1 of chapter 77 of our statutes provides that when an execution is not issued on a judgment within one year from the rendition thereof the judgment shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within seven years and the execution shall become a

lien from the time it is delivered to the sheriff. In *Pease v. Ritchie,* 132 Ill. 638, it was held that the word "issue," as used in the statute, requires an execution to be made out, properly attested by the clerk and delivered to the sheriff to be executed; that the object of issuing an execution is to collect the judgment, and that object cannot be carried out unless the execution is placed in the hands of an officer for collection. Snow filed an affidavit in the clerk's office in which he sought to give notice to creditors of the existence of his judgment and that the same was a lien upon the property in question, but the affidavit was not in compliance with the statute. At the time Anna Yelich and Mastick obtained their judgments, made their levies and had their sales the Snow judgment was not a lien upon the property of Yelich. Anna Yelich and Mastick thereby secured priority of liens and rights over the Snow judgment and the court committed no error in so decreeing.

It is insisted by Svalina and Snow that the court erred in decreeing that Anna Yelich, under her sheriff's deed and under the sheriff's deed to Mastick and the subsequent conveyance to her, was the owner of an undivided one-half interest in the premises. In support of this contention it is insisted that all that Anna Yelich and Mastick acquired under their sheriff's deeds was the equity of redemption of Yelich, and having failed to redeem within twelve months of the foreclosure sale their title under the sheriff's deeds was defeated; that prior to the sale under their judgments they were judgment creditors, but when they bought the property at their own sales they satisfied their judgments and lost their status as creditors and their judgments no longer existed because they had been satisfied of record, and that in lieu of their judgments they received whatever interest Yelich had in the premises at that time and by failing to redeem within twelve months they lost that interest.

The eighth finding in the decree was that Anna Yelich filed her bill for divorce in the circuit court of Cook county

against her husband on September 17, 1923; that Yelich was duly served with summons; that he filed an answer, and on February 18, 1924, an order was entered requiring him to pay $6 per week temporary alimony and $50 temporary solicitor's fee, both of which he failed to pay. The decree of divorce was entered on February 21, 1925, and found that Yelich was still the owner of an undivided one-half interest in the premises; that there was due Anna Yelich from her husband $362 alimony and solicitor's fee, and it allowed her $10 a week alimony until the further order of the court and $250 solicitor's fee. The amounts specified were by the decree made a lien upon the undivided interest of Yelich in the premises in question. Anna Yelich in her divorce suit on November 16, 1925, obtained a judgment against Yelich for $972 on account of alimony and solicitor's fee unpaid, and an execution was issued and levied on the property and was the basis of the title in her as found by the decree. Pending this divorce suit the master found, and the decree recited, that Yelich, with intent to cheat and defraud his wife and other creditors, undertook to convey his one-half interest to Svalina, and that Svalina, with notice and knowledge of the rights of Anna Yelich, actively participated in the fraudulent scheme to aid Yelich in defrauding his wife. The divorce bill was on file at the time the title was conveyed to Svalina, and he took the title with that knowledge and participated in a fraud. Section 4 of chapter 59 of our statutes provides that a conveyance or transfer of real estate made with intent to disturb, delay, hinder or defraud creditors shall be void as against such creditors, purchasers and other persons, and it was so held by this court in *Phillips* v. *Kesterson,* 154 Ill. 572. Within a few days after the foreclosure sale Svalina redeemed therefrom under section 18 of chapter 77 of our statutes, claiming to be a *bona fide* purchaser from the mortgagor. The decree found that he was a fraudulent grantee participating in the fraud and that redemption was made by him to

further aid Yelich in defrauding his wife and creditors. What Svalina really did was to pay out his money for the use and benefit of Yelich, and if he desired to be reimbursed he should look to Yelich for the same. In law, so far as Anna Yelich is concerned, it was her husband who made the redemption, and if Svalina used his own money in making the redemption he was furnishing money for the use and benefit of the creditors of Yelich. When Svalina redeemed he exhausted the rights of Anna Yelich to redeem. When an owner of the equity of redemption redeems, judgment creditors are prevented from further redemption. The owner of the equity of redemption has the prior right to redeem. The effect of this redemption by Svalina, who claimed to be one of the owners, was to reinstate the title in the owner, whoever it was. The decree found that Svalina held the title in, trust for Yelich. If the title was in Yelich then the judgments of Anna Yelich and Mastick were liens on his title, the levy and sale by the sheriff and the subsequent deeds transferring Yelich's title to Anna Yelich were good, and the decree was not in error in so holding.

It is insisted that the court erred in decreeing that Saravana, by virtue of his judgments against Yelich, was entitled to a prior lien. The Saravana contract of purchase and his two judgments against Yelich were of record and were liens upon the property before the making of the deed to Svalina. Even if Svalina had been a *bona fide* purchaser, he took the title subject to the rights of Saravana under his contract, the liens of his judgments against Yelich, as well as the $5000 mortgage on the property. If Svalina had desired to retain the half interest in the property he would be obliged to pay his portion of the $5000, pay the Saravana judgments and perform the contract of sale. If Svalina was a *bona fide* purchaser he would have determined the purchase price in view of the record and the value of the property. The finding of the decree is that Svalina was a

fraudulent grantee, actively participating in a scheme to cheat and defraud others. The filing of the bill for partition and the redemption made by him were steps taken by him in his scheme to defraud, and he should not be allowed to profit by them. The redemption merely paid off the mortgage and returned to the purchaser the amount of his purchase price. It left the title in the same condition that existed before the foreclosure, except that the mortgage lien had been removed by the sale and redemption. The court did not err in decreeing that Saravana, by virtue of his judgments against Yelich, was entitled to a lien prior to the rights of Svalina.

It is insisted that Anna Yelich and Saravana had interest in the foreclosure proceeding adverse to the interest of Svalina, and that they were estopped by the findings of the foreclosure decree from questioning the title of Svalina under his deed from Yelich. In support of this contention it is insisted that the master found that in the foreclosure proceeding it was decreed that Yelich had conveyed to Svalina an undivided one-half interest in the property; that the deed was on record and was subject to the inchoate right of dower of Anna Yelich; that the subject matter and the parties in this cause are the same as in the foreclosure proceeding, and that the decree in the foreclosure proceeding was *res judicata* as to all rights and liens upon said premises as found by said decree.

The pleadings in this case were not sufficient to raise the question of an estoppel. If a previous adjudication is relied upon as a bar it must be set up by plea or answer. (*Mettler* v. *Warner,* 243 Ill. 600.) The burden of establishing estoppel is upon him who invokes it. In order that a judgment or decree shall operate as an estoppel it must either appear on the face of the record or be shown by extrinsic evidence that the precise question was raised and determined in the former suit. (*Gouwens* v. *Gouwens,* 222 Ill. 223; *Sawyer* v. *Nelson,* 160 id. 629.) In her

cross-bill Anna Yelich adopted all of the prior proceedings in the case. To this cross-bill Svalina filed his answer and for the first time undertook to plead an estoppel. He alleged that the parties to this suit were all parties to the foreclosure; that in the foreclosure decree it was found that Svalina had a deed from Yelich; that Anna Yelich did not file exceptions to the master's report, and she is bound by the findings of the master and is estopped from claiming any rights as set forth in her cross-bill. In a plea in estoppel it is necessary to allege that the question of the validity of the deed was before the court for adjudication and that question was in fact decided so as to bind each of the parties. These facts must be shown by proper averments of fact and not by averments of legal conclusions. (*Weber* v. *Mick,* 131 Ill. 520.) Svalina has not brought to this court any of the evidence and has omitted the decree of foreclosure referred to in the master's first report. There is nothing before this court except a mere reference to this foreclosure decree. The finding that there was a deed to Svalina from Yelich was not an adjudication that the deed was valid. It could still be attacked for fraud. (*Weber* v. *Mick, supra.*) The finding of the decree in the foreclosure suit, even if it held that Svalina had acquired legal title by deed, was not an adjudication that he held the fee simple title for himself in good faith for a valuable consideration. He might have held it for another, or upon a trust by implication in favor of another. (*First Nat. Bank* v. *Leech,* 207 Ill. 215.) The findings of the decree in this case show that the conveyance to Svalina was not in good faith but was a fraud. This court does not know what the issues were in the foreclosure suit except by inference or that any evidence was received by the master on the question of estoppel. The answer of Svalina does not set up facts which in law amount to an estoppel. There is no averment showing whether this was a valid deed, or whether Svalina was a fraudulent grantee or a *bona fide* purchaser, or whether

he had the deed as security for the payment of money advanced, or whether the deed was supported by a valuable consideration. The answer does not set up that in the foreclosure suit the validity of that deed or any of these matters were litigated, or that it was necessary to determine the validity of the deed for a proper decision of the issues under the foreclosure case. Anna Yelich and Saravana, under the pleadings and the findings, were not estopped by the findings of the foreclosure decree from questioning the title of Svalina under his deed from Yelich.

It is insisted by appellants that the master and the decree found that the deed to Svalina should be set aside as a cloud upon the title of Anna Yelich but erroneously failed to return to Svalina the $500 loaned by him to Yelich. In *Clark* v. *Harper,* 215 Ill. 24, it was held that where a grantee takes a conveyance absolute upon its face and attempts to set it up as a purchase when in truth it is a mere security for a debt, such conduct will, under most circumstances, be regarded as a fraud and will prevent such grantee from claiming to be a *bona fide* mortgagee. The master's report found that at the time the deed was made to Svalina he and Yelich conspired to cheat and defraud the creditors of Yelich, and that the quit-claim deed was made to serve a double purpose: First, to secure Svalina for his $500 loan, and second, as an instrument to aid Yelich in defrauding his creditors. Svalina nowhere in his pleadings set up any claim that this deed was in the nature of a mortgage to secure the payment of $500. He at all times claimed to be a *bona fide* purchaser for value. He knew, however, that Anna Yelich had a bill filed for divorce pending against her husband at the time the deed was executed and he did not require her to join in the deed. He knew that Saravana was in possession of the property and had a contract on record for a purchase of a one-half interest from Yelich, and he knew the judgments against Yelich. On the trial he admitted all of these facts, and he failed to produce a

written contract of purchase between him and Yelich which he claimed was entered into prior to the date of the deed to him. All of these facts were a badge of fraud. (*Zwick* v. *Catavenis,* 331 Ill. 240.) In *Beidler* v. *Crane,* 135 Ill. 92, it was held that a transfer of property must not only be upon a good consideration but it must also be *bona fide;* that even though the grantee pays a valuable, adequate and full consideration, yet if the grantor sells for the purpose of defeating the claims of creditors and the grantee knowingly assists in such fraudulent intent, or even has notice thereof, he will be regarded as a participant in the fraud, and that a deed fraudulent in fact may be set aside by creditors, and it will not be permitted to stand for the purpose of reimbursement or indemnity. Several authorities were cited in that case supporting this holding. These authorities were sufficient to uphold the decree denying to Svalina any right of reimbursement from Anna Yelich for the $500.

It is insisted that Svalina was entitled to be reimbursed for one-half of the money paid out to redeem the premises from the foreclosure proceeding and remove the lien of the first mortgage. The decree recites that Saravana in his bill for partition offered to pay to Svalina a proper proportion of the redemption money, and he was ordered by the decree to pay one-half thereof, so there is no merit in this contention.

Svalina complains about the allowance of a solicitor's fee in this case. The decree provides that a solicitor's fee shall be allowed and that it shall be paid by Saravana and Anna Yelich. Neither of them is complaining of this provision and Svalina is in no position to complain.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*