**HUMMEL v. CERNOCKY et al. (two cases).**

**Nos. 9102, 9103.**

Circuit Court of Appeals, Seventh Circuit.

May 22, 1947.

Rehearing Denied June 11, 1947.

Simon H. Alster, David B. Berger, Jerome S. Wald and Theodore E. Rein, all of Chicago, Ill., for Hummel.

Walker Butler, of Chicago, Ill., for Cernocky.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

This is a suit by the trustee in bankruptcy of the estate of Mary S. Cernocky to set aside as fraudulent the transfers of certain real and personal property to the defendant Louis Cernocky, Jr., which property it is alleged belonged to the bankrupt, who is the mother of Louis. The court refused to set aside the transfer of the real property but did set aside the transfer of the personal property as made in fraud of creditors. The trustee has appealed from the former part of the decree and the defendant from the latter.

The contested issues, as stated by the plaintiff are: Was the real and personal property of the bankrupt transferred in fraud of her creditors, and is such property recoverable by the trustee in bankruptcy?

The District Court made findings of fact and stated its conclusions of law thereon. If the findings are not clearly erroneous and support the decree, the judgment of the District Court must be affirmed. The court's findings supported by substantial evidence are as follows.

At the time of his death on September 20, 1934, Louis Cernocky, Sr., and his wife Mary, the bankrupt, owned as joint tenants a parcel of real estate in Fox River Grove, Illinois. This property measured approximately 200 by 200 feet and was improved with two principal structures, a modern two-story brick building on the front along the Northwest Highway and a frame building on the rear, and with three other frame buildings. Louis, Sr. and Mary Cernocky jointly owned and operated a restaurant and tavern in the brick building, which building had living quarters on the second floor, and a dance hall in the frame building on the rear of the property. The place was known as "Louis' Place." At the time Louis Cernocky, Sr., died, he and his wife, the bankrupt, owed various creditors ap-

proximately $20,000, and the real estate was encumbered by a mortgage of $18,500.

On October 2, 1934 Mary Cernocky conveyed the real estate to her son Edward, subject to the mortgage of $18,500. He paid no consideration for the transfer. On August 15, 1937 the mortgage on the real estate became due, and Edward Cernocky renewed it to the holder, the State Bank of Woodstock, by the execution, by himself alone, of a note and trust deed. On September 15, 1937 Edward Cernocky conveyed the property in trust to Richard Novak. On December 23, 1939 Novak resigned as trustee and conveyed the property to George Kosatka as successor-trustee. The beneficiaries in this trust agreement were Mary, Edward, and Louis Cernocky, Jr.

The buildings were insured against fire in the sum of $20,000 and the personal property in the sum of $5,000. In November 1939 there were two fires in the dance hall, and the insurance companies settled the loss for $11,500 sometime between May 20, 1940 and April 19, 1941.

From 1934 to May 2, 1942, upon which latter date Mary and Edward Cernocky executed to Louis Cernocky, Jr., a bill of sale for certain personal property located in Louis' Place, Mary Cernocky incurred liabilities for food, drink, liquor, advertising, printing, and other expenses in connection with the operation of the establishment, all of which liabilities she set forth in her schedules in bankruptcy.

On May 20, 1940 one John B. Kelter, who was then the owner and holder of the first mortgage of $18,500 upon the real estate and of a chattel mortgage executed on September 30, 1937 by Edward Cernocky upon certain personal property not described or located, instituted foreclosure proceedings in the State court on both the real estate and the chattel mortgages. The decree in the foreclosure suit found that Kelter was the owner and holder of both mortgages and that there was due him thereon on February 19, 1941 $20,995.17. On that date the net proceeds of the insurance settlement were paid to Kelter, leaving a balance due of $13,656.23. The foreclosure decree ordered that the mortgage be paid within five days of the date of the decree, which was March 7, 1941, and in default thereof that the property be sold at public sale.

Louis Cernocky, Jr., satisfied the foreclosure decree by the payment of $778.66 in cash and the execution of a mortgage upon the real estate in the sum of $14,000, and he assumed and paid over $6,000 of the unpaid liabilities of the bankrupt. At the same time, to-wit, April 19, 1941, Mary, Louis, Jr., and Edward Cernocky, as beneficiaries in the trust agreement of September 15, 1937, signed written directions to the trustee, Kosatka, directing him to convey the real estate in question, legal title to which he held, to Louis Cernocky, Jr. At that time there were certain items of indebtedness for refrigeration equipment, repair work, and materials which had not been paid and which Louis Cernocky, Jr., agreed to pay. The amount does not appear in the findings.

Subsequent to April 19, 1941 and prior to April 7, 1943, Louis Cernocky, Jr., expended $11,100 in addition to the rents collected, the amount of which is not found, in improving and repairing the premises. The court found that on April 19, 1941, the date that Louis Cernocky, Jr., took title to the real estate, it was of the approximate value of $20,000.

On May 2, 1942 Mary and Edward Cernocky gave to Louis Cernocky a bill of sale "conveying * * * certain personal property and equipment in the restaurant, tavern and living quarters and elsewhere situated on the premises" known as Louis' Place. No consideration was paid therefor.

From these findings and the court's decree, it appears that Louis Cernocky, Jr., received real estate of the value of $20,000 and personal property of the value of $2,700.11. The court by its decree denied the claim of the trustee to set aside the transfer of the real estate and ordered Louis Cernocky, Jr., to turn over to the trustee the sum of $2,700.11, the value of the personal property.

We consider first the appeal of the trustee involving the real estate. We may assume that all the transactions by which the real estate was transferred by Mary

Cernocky to Edward Cernocky, subject to the existing mortgage and the renewal of the note and mortgage by him in his own name, and the transfer of the real estate in trust were of no effect as against the creditors of Mary Cernocky, and that on April 19, 1941 the real estate in question still belonged in equity to Mary Cernocky. This was the date upon which Louis Cernocky, Jr., acquired title. On that date, the court found, the real estate was worth $20,000. Louis Cernocky, Jr., gave consideration for the property first, by obtaining a satisfaction of the foreclosure decree in the State court against the real estate by paying the mortgagee $778.66 in cash, and by giving a mortgage on the real estate for $14,000, which two sums equalled the amount then due under the mortgage, and secondly, by agreeing to pay and paying debts of the bankrupt totalling $6,658.91. Louis Cernocky, Jr., therefore paid and obligated himself to pay on the date he acquired title to the real estate, which was before the petition in bankruptcy was filed on October 12, 1942, a sum in excess of the fair value of the real estate as found by the court. There was therefore no equity remaining in such real estate for the benefit of the creditors represented by the trustee in bankruptcy. The bankrupt disposed of the real estate before adjudication in bankruptcy for a sum in excess of its fair value. There is no finding that Mary Cernocky was insolvent on the date of this transfer of the real estate for more than its value, and which transfer was made eighteen months prior to bankruptcy. The District Court found on substantial evidence that Louis Cernocky, Jr., acted in good faith with no intent on his part to hinder and delay the creditors of Mary Cernocky. In such circumstances the law as laid down in Beidler v. Crane, 135 Ill. 92, 25 N.E. 655, 25 Am.St.Rep. 349, and Svalina v. Saravana, 341 Ill. 236, 173 N.E. 281, 87 A.L.R. 821, and similar cases has no application, for in those cases the transferee did not act bona fide and without intent to hinder and delay creditors, as the court found in the instant case. In those cases the transferee was a participant in the fraud. Since there was no fraud here on the part of Louis Cernocky, Jr., therefore the trustee could not recover under any Federal or State law. 11 U.S.C.A. § 110, sub. e(2).

We now come to the appeal of the defendant Louis Cernocky, Jr., from so much of the decree as required him to pay to the trustee in bankruptcy the sum of $2,700.11. This was the value of the personal property which the court found had been transferred without consideration to Louis Cernocky, Jr., by the bankrupt, his mother, on May 2, 1942, pursuant to a bill of sale executed on that date on the personal property in Louis' Place. Her son Edward joined with her in this bill of sale. There is no finding that Edward Cernocky had any interest in the personal property. There is substantial evidence to support the court's finding that from 1934 to May 2, 1942, the date of the bill of sale, the bankrupt, Mary Cernocky, was operating the restaurant and tavern known as Louis' Place, and that she had incurred in the operation legal liabilities which she scheduled as such in the bankruptcy petition. She owned the personal property when her husband died, and she was not shown to have ever parted with it. Mary Cernocky did testify that from 1937 on Edward Cernocky and his wife owned and operated Louis' Place, but evidently the District Court did not believe her in the light of the other evidence. Some mention is made in the findings of a chattel mortgage given by Edward Cernocky, but it does not appear whose chattels they were, where they were located, or their value. So it is evident that the chattels Louis Cernocky, Jr., received came from the bankrupt, pursuant to the bill of sale of May 2, 1942 which was executed without consideration. As the District Court found, this was fraudulent as to the creditors of the bankrupt, and the value thereof was properly recoverable by the trustee. 11 U.S.C.A. § 110, sub. e.

The District Court did not err in decreeing that the defendant Louis Cernocky, Jr., should pay to the trustee the value of the personal property, which the court found to be $2,700.11. The cross-appeal of the defendant Louis Cernocky, Jr., is denied.

We find no error in the record, and the judgment of the District Court is affirmed.